CHARLES F. NOYES, Landlord, *v.* LEOPOLD WULSON, Tenant, and MIDTOWN WINE SHOP, INC., et al., Undertenants.

Municipal Court of New York, Borough of Manhattan, February 16, 1944.

*Irving L. Kalish* for landlord.

*Leo Goreff* and *Max J. Fink* for tenant.

*Gerald J. Craugh* and *William G. McKnight* for Mrs. Edward S. Christie and another, undertenants.

*Maurice R. Whitebook* (*Ira A. Schiller, Branch Attorney*), for Administrator of Office of Price Administration.

GENUNG, J. This is a summary holdover proceeding. The determination of the issues depends upon the interpretation given by the court to certain sections of the Rent Regulation for Housing issued by the Office of Price Administration as affecting the New York City Defense-Rental Area. (8 Fed. Reg., p. 13914.)

The lease with the main tenant, Wulson, is for the entire building known as 16 East 54th Street, New York City, to be used by the tenant " for art galleries and apartments in accordance with New York State Laws and City Ordinances ". The lease provided, among other things, that the landlord could cancel and terminate the tenancy upon giving sixty days' notice in writing to the tenant. Such notice was given to take effect as of December 31, 1943. After that date the landlord was entitled to possession as against the tenant and all persons holding under him, unless prohibited from obtaining such possession by the Rent Regulation.

The court visited and examined the premises. The basement or first floor had been used for business purposes. The second floor had been used by the tenant Wulson as an art gallery.

He sold objects of art, antiques, pictures and furniture. The fourth and fifth floors are occupied by two subtenants of Wulson, for dwelling purposes. The third floor is the bone of contention. Wulson claims that he uses it for dwelling purposes. The landlord contends he uses it and has been using it in the past for business purposes. It is apparent that Wulson uses it for both purposes. There were furniture and many pictures and objects of art in the premises. There was a couch in a small alcove and kitchen equipment installed in a closet. There is only one entranceway to the third floor and it is difficult, if not impossible, to determine where the business portion leaves off and the dwelling portion begins. The lease required, and Wulson testified that he supplied heat, water and electricity, made repairs and furnished janitor services at his own cost and expense. Wulson testified that the premises had originally been used and occupied as a one-family dwelling and was now being used by three families living independently of each other. He admitted that no certificate of compliance as required by section 301 of the Multiple Dwelling Law had been applied for, issued or obtained.

The tenant and the two subtenants oppose the landlord's application for possession on the ground that, under the Rent Regulation, if at the expiration or termination of the lease term the tenant is using or occupying the premises or a portion of the premises for his own dwelling, neither the tenant nor subtenants also occupying and using the premises for dwelling purposes can be evicted, so long as they are willing to pay the rent to which the landlord would be entitled. The Regulation they rely upon reads as follows:

" Sec. 6. *Removal of tenant*—(a) *Restrictions on removal of tenant*. So long as the tenant continues to pay the rent to which the landlord is entitled, no tenant shall be removed from any housing accommodations, by action to evict or to recover possession, by exclusion from possession, or otherwise, nor shall any person attempt such removal or exclusion from possession, notwithstanding that such tenant has no lease or that his lease or other rental agreement has expired or otherwise terminated, and regardless of any contract, lease agreement or obligation heretofore or hereafter entered into which provides for entry of judgment upon the tenant's confession for breach of the covenants thereof or which otherwise provides contrary hereto, unless: * * *

" (4) *Subtenants on expiration of tenant's lease*. The tenant's lease or other rental agreement has expired or otherwise termi-

nated, and at the time of termination the occupants of the housing accommodations are subtenants or other persons who occupied under a rental agreement with the tenant, and no part of the accommodations is used by the tenant as his own dwelling; * * *."

The landlord contends that the building is used predominantly for commercial or business purposes, and therefore is specifically exempted by the Rent Administrator from the Rent Regulation. He refers the court to subdivision 6 of " Guide to the Rent Regulation for Housing " issued by the Office of Price Administration. The court takes judicial notice of its existence. It reads as follows: " (6) Property rented exclusively or predominantly for commercial purposes is exempt. If combined commercial space and living quarters can be rented separately the total rent must be divided by the landlord into the amount for the commercial space and the amount for the dwelling. Only the rent for the dwelling is subject to regulation. The tenant may remain in possession of the dwelling without continuing to rent the commercial space. Where the commercial space and the living quarters cannot be rented separately, the entire rent is subject to control unless the commercial space is larger than the dwelling or, though smaller, has a greater rental value."

The landlord contends further, even if the court finds that the tenant at the termination of the lease was using or occupying a portion of the premises for his dwelling, that since such use or occupancy was in contravention of the Multiple Dwelling Law it could not be deemed occupancy by the tenant for " dwelling purposes " within the meaning of the Rent Regulation (§ 13, definitions).

The court finds that the building was being used predominantly for commercial purposes. This finding is based on its own inspection and the testimony given. It is also the fact that the portion of the premises used for commercial purposes has a greater rental value than dwelling accommodations. Wulson's use of part of the third-floor space for dwelling purposes when taken in conjunction with the occupancy of the subtenants is in violation of the Multiple Dwelling Law. The court must, therefore, find as a matter of law that the floor occupied by him cannot be rented separately for commercial purposes and for living quarters. This together with the provisions of the lease which call upon the tenant to furnish heat, water and electricity to other occupants in the premises would make it impossible to sever the tenancies. It would appear, therefore,

that the property is specifically exempted from the provisions of the Rent Regulation.

Even if the court were to find or to hold that the provisions of the Regulation applicable to commercial property did not apply to the present case, it would still be constrained to uphold the contention of the landlord that since Wulson's tenancy or occupancy was illegal, he could not be deemed to have occupied "dwelling accommodations" within the meaning of the Rent Regulation. The provisions of the Multiple Dwelling Law were enacted for specific purposes. It was intended to set up minimum standards for fire protection, light and air and sanitation. The scope of the law covers all types of structures in the city of New York used for dwelling purposes except one-family and two-family houses and public institutions. Section 301 of the Multiple Dwelling Law provides: " No building hereafter constructed as or altered or converted into a multiple dwelling shall be occupied in whole or in part for human habitation until the issuance of a certificate by the department charged with the enforcement of this chapter that said building conforms in all respects to the requirements of this chapter."

Concededly, no certificate has ever been issued. In fact there is no proof that the use of the premises as a multiple dwelling conforms to the requirements of the Multiple Dwelling Law. If the tenant's contention were sound, he could, with the landlord's permission, equip an office-building suite with living facilities, occupy it for dwelling purposes and defy subsequent attempts at eviction. The court cannot in good conscience hold that the promulgators of the Rent Regulation intended it to cover an illegal occupancy. The law does not sanction illegality. The subtenants being persons who occupied under a rental agreement with Wulson, the tenant, their tenancies fall with Wulson's tenancy, and subdivision (4) of section 6 of the Rent Regulation affords them no defense. In addition their occupancy is no more lawful than that of their own landlord, Wulson. The court directs the issuance of a final order for the landlord as against the tenant and all persons claiming possession under him. Warrant to issue five days from the date hereof.