THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* MAX FOGEL, Defendant.

City Magistrate's Court of New York, Borough of Manhattan, Municipal Term, November 18, 1949.

*John P. McGrath, Corporation Counsel (Bernice P. Rogers* of counsel), for plaintiff.

*Harry A. Roth* for defendant.

CANUDO, M. On October 2, 1947, the defendant Max Fogel acquired title to a thirty-nine-family apartment house at 812 West 181st Street, in the city and county of New York. On November 12, 1947, the defendant served upon the tenants of the four apartments specified in the complaint now before me, notices advising them of his election to terminate their tenancies at the end of that month, because these apartments were being used for single-room occupancy in violation of sections 82 and 248 of the Multiple Dwelling Law. The tenants of these four apartments took no steps to change or modify the nature of their occupancy, and the following events ensued:

(1) On December 5, 1947, the defendant filed applications for certificates of eviction against these tenants with the Temporary City Housing Rent Commission of the City of New York. On March 30, 1948, and April 23, 1948, these applications were denied.

(2) On April 30, 1948, the defendant filed applications with the temporary housing rent commission for reconsideration of the orders which denied certificates of eviction; these were denied on May 13, 1948.

(3) On or about June 11, 1948, the defendant instituted proceedings in the Supreme Court of the State of New York to review the determination made by the temporary housing rent commission and on June 30, 1948, after hearing argument on this application, Mr. Justice WALTER entered an order annulling such determination and directing issuance of certificates of eviction (*Fogel* v. *Ross*, N. Y. L. J., June 23, 1948, p. 2360, col. 1).

(4) On August 4, 1948, the city rent commission issued certificates of eviction containing the following qualification: " This Certificate authorizes action or proceedings for termination of the prime tenancy but not the removal of the prime tenant from the portion of the premises (if any) occupied by him for his own

living quarters, nor the removal of any roomers or subtenants.''

(5) Thereafter the defendant instituted summary proceedings in a test case against one of the four tenants, and following a trial in the Municipal Court of the City of New York, a final order was entered *in favor of the tenant* on September 20, 1948.

(6) On or about August 3, 1949, the defendant and all four tenants involved in this alleged violation were served with summonses by the department of housing and buildings for violation of section 248 of the Multiple Dwelling Law.

The provisions of the Multiple Dwelling Law are intended, basically, to set standards for fire protection, light, air and sanitation (*Noyes* v. *Wulson,* 181 Misc. 481 [1944]). While it is true that both landlord and tenant are responsible for observing provisions of section 248 of the Multiple Dwelling Law and that the public officers charged with enforcement thereof can proceed against either (*Morris* v. *19 West 48th St. Corp.,* 183 Misc. 988 [1944]), a fair determination with respect to such responsibility can be reached only after careful consideration of a defendant's attitude and his actions with respect to an alleged violation of the statute. In normal times a landlord could proceed quickly and effectively against a tenant responsible for violations of the Multiple Dwelling Law. Extraordinary circumstances resulting from wartime conditions and their aftermath have, very properly, brought about special enactments and new agencies for the protection of tenants. These conditions have stood in the defendant's way and have thwarted him in his efforts to comply with the provisions of section 248.

In *People* v. *Broadway-Sheridan Arms* (275 App. Div. 352 [1949]), under circumstances quite similar to those now before me, the court directed its attention to the fact that the department of housing and buildings has the power and the duty, where occupancy of a building is hazardous, to cause the premises to be vacated. There the court stated (p. 356) that the department, '' with a plenary power and jurisdiction of its own should not bring a criminal prosecution for illegal occupancy against a landlord anxious to terminate the same, but who has been frustrated in every attempt to accomplish this end by recourse to the procedures of the law.''

The evidence clearly shows that the defendant Fogel instituted proceedings to end the illegal occupancy of the premises involved in this complaint *almost as soon as he acquired title to the building* and long before the summons was issued against him by the department of housing and buildings. There is noth-

46

ing in the evidence to show any knowledge on his part of the conditions existing in these four apartments prior to November 12, 1947, the day when he took title and possession. Certainly there is nothing to show that he at any time consented to the existence of these violations or that he wished the single-room occupancy to continue.

Obviously, the defendant Fogel has exercised every reasonable effort at his command to end the illegal occupancy of these four apartments. I can see no other legal measures to which he might have resorted to effect this end. Even when he did obtain certificates of eviction pursuant to an order of a Supreme Court Justice, these certificates were so qualified as to be of no value to him.

It is important to stress here that the department, when it issued the summons against the defendant, also issued identical summonses against the four tenants in whose apartments the violations were found. These tenants have all been convicted and fined. The basis of my finding in the case now before me lies in the very distinction between those four cases and the one at hand. Where, on the one side, the tenants continued to violate the law after notice from the owner and resisted every effort on his part to force removal of the single-room occupancy, the landlord on the other hand proceeded diligently and expeditiously, in the civil branch of the law, to end the violations long before any official notice was brought to him by the department of the fact that the violations existed. It would be manifestly unfair to charge him now with criminal responsibility for a condition which he so conscientiously tried to dispel.

For the reasons set forth above, I find the defendant not guilty.