In the Matter of BROWN-FORMAN DISTILLERS CORPORATION, Petitioner, v STATE LIQUOR AUTHORITY, Respondent.

First Department, March 8, 1984

### APPEARANCES OF COUNSEL

*Macdonald Flinn* of counsel (*William B. Schreiber* and *Margery A. Colloff* with him on the brief; *White & Case* and *Schreiber & MacKnight,* attorneys), for petitioner.

*August L. Fietkau* of counsel (*Melvyn R. Leventhal* and *Richard G. Liskov* with him on the brief; *Robert Abrams, Attorney-General,* attorney), for respondent.

### OPINION OF THE COURT

ASCH, J.

Petitioner Brown-Forman Distillers Corporation produces and imports distilled spirits and sells them to independent wholesalers in more than 30 States including New York. On May 22, 1981, the State Liquor Authority (Authority) served Brown-Forman with a statement of charges

alleging that it had violated section 101-b (subd 3, par [d]) of the Alcoholic Beverage Control Law by selling distilled spirits to wholesalers in New York at prices higher than the prices charged wholesalers in other States. Brown-Forman had filed affirmations stating that its prices were no higher in New York than elsewhere in the United States. The charges alleged that Brown-Forman had made payments to wholesale purchasers in other States which effectively caused the price of petitioner's products to New York wholesalers to be higher than in those other States.

In the determination and findings adopted by the Authority on February 5, 1982, it was concluded that petitioner violated the New York affirmation law, section 101-b (subd 3, par [d]) of the Alcoholic Beverage Control Law, by making payments to wholesale purchasers in other States. The penalty imposed by the respondent Authority was a 10-day license suspension and a forfeiture of bond in the amount of $20,000 on each of petitioner's two licenses. The license suspension was deferred subject to imposition within a year should the Authority determine that petitioner failed to take "practical precautions to assure * * * proper conduct".

Petitioner then commenced this CPLR article 78 proceeding in Supreme Court, New York County, which was transferred to this court for initial determination pursuant to CPLR 7804 (subd [g]). It asserts that respondent Authority's determination is unsupported by any evidence and that hence, it contravenes the substantial evidence requirement of CPLR 7803 (subd 4). In addition, the petitioner claims that the New York affirmation statute, as thus applied, burdens interstate commerce, in violation of the United States Constitution. These contentions are without merit.

The Moreland Commission appointed by the Governor in 1963 to study the sale and distribution of alcoholic beverages in New York found that New York consumers were victims of gross price discrimination on the part of the liquor industry (Moreland Commission Report No. 3, pp 3-7). As a result, the Governor proposed legislation to end the liquor industry's discrimination against its New York customers. The Legislature enacted chapter 531 of the Laws of

1964, which sought to reduce consumer prices in New York. Section 9 of that statute, the affirmation provision, provided that in addition to filing a schedule of its prices to wholesalers, the distiller must file an affirmation that the scheduled price of each of its products is no higher than the lowest price at which the product was sold anywhere during the month immediately preceding the month in which the schedule was filed.

Thus, to engage in business in New York, a distiller or wholesaler has to affirm that the price of each of its products is as low as the lowest price in the country during the preceding month. This affirmation provision was challenged on the grounds, *inter alia,* that it constituted an exercise of power not authorized by the Twenty-First Amendment and violated the commerce clause. However, the statute was adjudged "to be, in all respects, constitutional and valid" (*Seagram & Sons v Hostetter,* 45 Misc 2d 956, 958, affd 23 AD2d 933, affd 16 NY2d 47, affd 384 US 35, reh den 384 US 967).

Although the constitutionality of the affirmation provisions of section 101-b of the Alcoholic Beverage Control Law was upheld in *Seagram,* implementation of the law as originally enacted involved a number of problems. Consequently, in 1967 the Legislature amended the affirmation law to require distillers to affirm their New York prices to be no higher than their *current* prices elsewhere (Alcoholic Beverage Control Law, § 101-b, subd 3, par [d]). The present affirmation law provides that in addition to filing a schedule setting forth a description of each product and its price, the distiller must affirm that "the bottle and case price of liquor to wholesalers set forth in such schedule is no higher than the lowest price at which such item of liquor will be sold by such brand owner * * * to any wholesaler anywhere in any other state of the United States or in the District of Columbia * * * at any time during the calendar month for which such schedule shall be in effect" (Alcoholic Beverage Control Law, § 101-b, subd 3, par [d]).

To avoid the loophole of a distiller affirming that a given product was to be sold nationwide at a set price and then providing substantial discounts in the form of cash credit or free goods to purchasers in another State (which would

result in the New York price being higher than the lowest real price elsewhere notwithstanding technical compliance with the affirmation law), the Legislature provided that in determining the lowest price elsewhere, "appropriate reductions shall be made to reflect all discounts" in excess of those listed on the New York schedule and shall reflect "all rebates, free goods, allowances and other inducements of any kind whatsoever offered or given to any" purchasing wholesaler in the Nation (Alcoholic Beverage Control Law, § 101-b, subd 3, par [g]).

Accordingly, the affirmation law mandates equality not in the nominal list prices but in the real prices to the wholesalers. The distillers remain free to grant discounts, rebates, allowances, free goods, or other inducements to purchasers outside New York, *so long as these payments are taken into account by* the distiller in setting its New York affirmation price. As was true under the prior affirmation law, distillers are free to set their prices at any level so long as the New York price is no higher than the lowest real price elsewhere.

The determination by the hearing officer is supported by substantial evidence in the record. Under petitioner's program certain selected wholesalers in the various States have been provided a "lump sum" allowance, payable quarterly. This allowance, which is determined on an annual basis before the beginning of petitioner's fiscal year, is based initially upon budget requests from its various "state managers." Each State manager recommends a total dollar figure for that State on a per case basis. Petitioner asserts that its program involves a "no strings" allowance in that the wholesaler is not required to reduce his prices. It conceded, however, it employs independent market research firms to determine what promotional activities are employed by the recipients of the allowance. Petitioner also admitted that, while an allowance is effective without change for one fiscal year, the findings of the market researchers and petitioner's own determination as to how the allowance has been used are considered in deciding whether to discontinue or reduce the following year's allowance to a given wholesaler. In addition, while petitioner argues that its program should not be considered a price

rebate or discount because the wholesalers are not informed of the per brand, per case breakdown of his lumpsum allowance, it is uncontroverted that the lump sum is calculated by assigning each unit of each of petitioner's products in a given market area a dollar figure. Petitioner projects each wholesaler's annual volume of sales of each product. The allowance is finally determined by multiplying the dollar figure by the wholesaler's projected sales. The aggregate allowance is determined by adding the sum arrived at for each of petitioner's products that is stocked by the wholesaler.

Thus, petitioner's program, which is not reflected in its price schedules filed with the State Liquor Authority, effectively *reduces* the actual liquor prices it charges in other States below the prices that it charges New York wholesalers. Petitioner is aware of or can determine the discount offered each wholesaler on a per item basis. Petitioner can also determine which is the largest discount offered for a particular item and is also in a position to use that discounted price to comply with the affirmation requirements of subdivision 3 of section 101-b of the Alcoholic Beverage Control Law. Thus, there was more than a rational basis upon which the hearing officer could determine that petitioner's allowance program constituted the "rebates, free goods, allowances and other inducements of any kind whatsoever" proscribed by subdivision 3 of section 101-b of the Alcoholic Beverage Control Law. Petitioner failed in filing its New York affirmation under the terms of section 101-b (subd 3, par [g]) to take into account the allowance granted under its allowance program. In so doing, it was properly found to be in violation of subdivision 3 of section 101-b.

The sole constitutional issue before this court is whether the affirmation provision of subdivision 3 of section 101-b of the Alcoholic Beverage Control Law in its application to the petitioner's allowance program imposes an unreasonable burden on interstate commerce, in violation of the commerce clause of the United States Constitution. There is a strong presumption of statutory constitutionality (*Montgomery v Daniels,* 38 NY2d 41). Moreover, when competing State and Federal interests are balanced, the

Twenty-First Amendment to the United States Constitution creates an " 'added presumption in favor of * * * state [legislation]' " (*New York State Liq. Auth. v Bellanca,* 452 US 714, 718). Until every reasonable mode of reconciliation of the statute with the Constitution has been resorted to and found impossible, the statute will be upheld (see *Hotel Dorset Co. v Trust for Cultural Resources,* 46 NY2d 358, 370).

The petitioner and the dissent assert that the practical effect of section 101-b (subds 2, 3, par [d]) of the Alcoholic Beverage Control Law, as applied, impermissibly seeks to control petitioner's prices in other States. The dissent cites *United States Brewers Assn. v Healy* (692 F2d 275, affd with no opn __ US __, 104 S Ct 265), in support of this conclusion. However, the United States Supreme Court in reviewing New York's earlier affirmation statute has stated: "As part of its regulatory scheme for the sale of liquor, New York may constitutionally insist that liquor prices to domestic wholesalers and retailers be as low as prices offered elsewhere in the country." (*Seagram & Sons v Hostetter,* 384 US 35, 43, *supra.*) The application of subdivision 3 of section 101-b of the Alcoholic Beverage Control Law to petitioner's allowance program does not conflict with the holding in *Healy.* There, the court specifically found that "the effect" of Connecticut's affirmation law "is to control" minimum prices to wholesalers outside the State (*United States Brewers Assn. v Healy, supra,* p 282). Here, New York's affirmation statute has no impact on petitioner's allowance program and does not dictate out-of-State discounts. Finally, perhaps more significantly, the court in *Healy* explicitly found that the Connecticut law sought to regulate prices in *adjoining* States. "Historically, the retail price of beer has been generally higher in Connecticut than in its neighboring states, *i.e.,* Massachusetts, New York, and Rhode Island. As a consequence, Connecticut residents have crossed state borders in significant numbers to purchase beer in other states at lower retail prices. In 1981, the Connecticut legislature * * * [enacted] the beer price affirmation provisions challenged here. The district court found it undisputed that the purpose of these provisions was to lower the retail price of beer in Connecticut, thereby increasing the purchase of beer by Connecti-

cut residents within the state and generating increased tax revenues for the state." (*United States Brewers Assn. v Healy, supra,* p 276.)

Unlike the facts in *Healy* (*supra*), however, no discriminatory intent underlies New York's affirmation law. On the contrary, the declared and actual purpose of the law is to *prevent* discrimination (Alcoholic Beverage Control Law, § 101-b, subd 1). Unlike the Connecticut law which was stricken, New York's affirmation law is not directed at restricting prices charged in neighboring States in order to "increase" liquor purchases in New York and to "generate increased tax revenues." The New York law makes no discriminatory distinction between adjoining States and distant States and cannot possibly be considered as an effort to reduce liquor sales in faraway States and thereby "generate increased revenues" here in New York.

Accordingly, the determination by respondent of February 5, 1982, finding that petitioner violated the New York affirmation law, section 101-b (subd 3, par [d]) of the Alcoholic Beverage Control Law, by making payments to wholesale purchasers in other States and thereby causing the wholesale prices of its products in New York State to be higher than petitioner's prices elsewhere in the Nation, and imposing a penalty of 10-day license suspension and a forfeiture of bond in the amount of $20,000 on each of petitioner's two licenses, deferring the license suspension subject to imposition within a year should the respondent Authority determine that petitioner failed to take practical precautions to assure proper conduct, should be confirmed, without costs, and the petition dismissed.

KUPFERMAN, J. (dissenting). I would annul the determination of the State Liquor Authority (Authority) on the ground that the New York affirmation statute (Alcoholic Beverage Control Law, § 101-b)*, as applied by the Authority, imposes an impermissible burden on interstate com-

---

* Section 101-b (subd 3, par [d]) provides in pertinent part: "There shall be filed * * * an affirmation duly verified by the owner of such brand of liquor, or by the wholesaler designated as agent * * * that the bottle and case price of liquor to wholesalers set forth in such schedule is no higher than the lowest price at which such item of liquor will be sold by such brand owner or such wholesaler designated as agent, or any related person, to any wholesaler anywhere in any other state of the United States * * * during the calendar month for which such schedule shall be in effect".

merce in violation of the commerce clause of the Federal Constitution (US Const, art I, § 8, cl 3).

Brown-Forman Distillers Corp., the petitioner in this transferred CPLR article 78 proceeding, supplies numerous brands of wine and liquor to wholesalers in approximately 30 States, including New York. Of those States, approximately 20 have affirmation statutes modeled after that in effect in New York.

The issue presented is whether it is constitutional for the respondent Authority to penalize petitioner for allegedly falsely affirming that its prices to wholesalers for individual brands were as low in New York as in any other State, on the ground that a lump-sum promotional allowance given by petitioner to its wholesalers in other States, but prohibited by law in New York, effectively lowered the wholesale prices in other States below the prices affirmed in New York.

In 1977, the Federal Bureau of Alcohol, Tobacco and Firearms (BATF) ruled that the Federal Alcohol Administration Act does not prohibit the granting of lump-sum promotional allowances. (See BATF Bulletin 77-17.) In May, 1978, the BATF conditionally approved petitioner's request to conduct the program of promotional allowances which is the subject of this litigation. Among the conditions for approval are the following: (i) the allowances are to be with "no strings", to be spent as the wholesalers see fit; (ii) the amounts of the allowances are not to be dependent upon the wholesalers' volume of sales of any particular brand; and (iii) the program may be terminated at any time by petitioner.

Petitioner then sought permission from respondent to conduct the program in New York, but respondent refused to approve the program on the ground that subdivision 2 of section 101-b of the Alcoholic Beverage Control Law proscribes the furnishing of such allowances. That section provides in pertinent part: "It shall be unlawful for any person who sells liquors or wines to wholesalers or retailers * * * (b) to grant, directly or indirectly, any discount, rebate, free goods, allowance or other inducement of any kind whatsoever".

Petitioner holds liquor licenses for two premises used for distribution in New York. After a hearing with respect to each license, the hearing officer held that petitioner had falsely affirmed that its New York wholesale prices were as low as those in Massachusetts, where, the hearing officer held that petitioner's wholesale prices were effectively lowered by the promotional allowance approved as aforesaid by BATF. The respondent Authority adopted the determination of the hearing officer.

The immediate effect of the Authority's determination, if confirmed, would be to require petitioner either to lower its wholesale prices in New York to reflect the amount of the promotional allowances granted in other States, despite the fact that the allowances are not allocated by brand or unit but given in a lump sum, or to discontinue its Federally approved promotional program of granting allowances in other States. Should petitioner choose to lower its New York prices to comply, then, under the affirmation statutes in other States, petitioner would have to offer the same newly lowered prices as those offered in New York. Thus, the practical effect of section 101-b (subds 2, 3, par [d]) of the Alcoholic Beverage Control Law, as applied, is impermissibly to control petitioner's prices in other States. (See *United States Brewers Assn. v Healy,* 692 F2d 275, 279-282, affd __ US __, 52 USLW 3308.)

Under the circumstances of this case, the mode of liquor regulation chosen by New York constitutes such an interference with petitioner's operations elsewhere as to offend the commerce clause. (See *Seagram & Sons v Hostetter,* 384 US 35, 42-43, citing *Baldwin v G.A.F. Seelig,* 294 US 511.)

CARRO, BLOOM and ALEXANDER, JJ., concur with ASCH, J.; KUPFERMAN, J. P., dissents in an opinion.

Determination of respondent dated February 5, 1982, confirmed, the petition dismissed, without costs and without disbursements.