OPINION OF THE COURT
Lewis R. Friedman, J.
Petitioners, a number of tenants in 41 West 82 Street in Manhattan, seek an order pursuant to Housing Maintenance Code article 51 (Administrative Code of City of New York, ch 26, tit D, subtit V) to direct the owner and the managing agent for the premises to remove the 143 violations of record; they also seek an assessment of penalties for failure to correct the violations in a timely manner. The petitioners, joined by the respondent Department of Housing Preservation and Development (DHPD), further contend that the managing agent designation pursuant to Administrative Code of the City of New York § D2641.03 (a) (3) is defective, and request that penalties be assessed and an order enjoining further violations of that section.
At trial respondents contested only the existence of one of the violations. The court will direct that the remaining 142 viola *375 tians be corrected. The civil penalties question was originally severed in the absence of proof of service of the violations. Petitioner’s posttrial motion has properly presented the question of penalties. The court will therefore direct a hearing at which DHPD will supply the proof of service of the violation, if that proof currently exists.
The question of the eligibility of Mark Greenberg to be the managing agent, however, presents a question of first impression. Although there is ample case law explaining the necessity for strict compliance with the registration requirement (see, e.g., Normal Realty Co. v Rios, 109 Misc 2d 555 [Civ Ct, Bronx County 1981]; Chan v Kormendi, 118 Misc 2d 1026 [Civ Ct, Queens County 1983]), there are no cases interpreting the requirement that “an agent shall be a natural person over the age of twenty-one years and shall reside within the city or customarily and regularly attend a business office maintained within the city.” (Administrative Code § D26-41.03 [a] [3]; emphasis supplied.)
The proof at trial was essentially uncontroverted. Mark Greenberg, the registered managing agent of this building and 30 others in New York City, lives in Connecticut. He is a licensed real estate broker and maintains his primary office in Port Washington, New York; that office handles the clerical functions of Greenberg’s real estate company, receives telephone calls from tenants and others at its 516 area code number, receives mail and rental payments from tenants and serves as the headquarters for the staff members who regularly handle the maintenance of the buildings Greenberg manages. Green-berg has an office in Manhattan at 261 Madison Avenue. For $100 per month he has space in David Goldstick’s law offices; he shares a desk with a full-time associate of the firm, has the use of one file drawer and a shelf; the receptionist and the conference room; and is listed in the building’s lobby directory. Green-berg’s New York telephone number is not listed in the Manhattan directory; he was unable to produce a business card and had “no recollection” whether he or his company pay New York City taxes. For more than five years Greenberg has not used the New York address in any of his dealings with tenants. He testified that in the past year he spent 15% of his time in the New York office, mostly after 5:00 p.m., handling sales and closings on cooperative apartments in the buildings he manages.
Whether Greenberg’s contacts with New York City are adequate turns on the purposes of the statute. A managing agent is a person who is required “to be in control of and responsible for *376 the maintenance and operation of such dwelling and to authorize, on behalf of the owner, the correction of any emergency conditions or the making of any emergency repairs for which the owner is responsible under the provisions of the multiple dwelling law or this code.” (Administrative Code § D26-41.03 [a] [3].) The legislative intent in first requiring a New York City nexus for managing agents in former Multiple Dwelling Code § D263.1 was to overcome the unavailability within the city of “ ‘owners or other persons having legal responsibility for [such] maintenance and operation’ ” of multiple dwellings in the City. (Former Multiple Dwelling Code § D26-1.0; see, People v Chodorov, 12 NY2d 176, 180 [1962].)
That legislative goal, continued in the 1967 Housing Maintenance Code, is designed to allow tenants and governmental authorities to contact the person responsible for the operation of a multiple dwelling. (See, Chan v Kormendi, 118 Misc 2d 1026, 1032, supra; Lazarus v Liebowitz, 85 Misc 2d 822, 827 [Civ Ct, Bronx County 1976].) It thus has become clear that a managing agent must be readily available to tenants. It is equally clear that the legal requirement of a registered address is that the managing agent must be available at that address. Respondents do not argue that the requirement that Greenberg be available within the City is unreasonable or unduly burdensome. Indeed Greenberg does not challenge the requirement but instead, contends that he complies with it.
There is an alternative reason for the requirement of a New York City nexus for the managing agent. The New York City Civil Court Act at section 110 (m) provides for service of process at the registered address. So, too, does Housing Maintenance Code article 51, particularly with respect to immediately hazardous class C violations. (Administrative Code § D26-51.01 [c] [1].) Service of process within the City assures jurisdiction in the Civil Court of the City of New York and makes services by tenants and governmental agencies relatively simple and inexpensive. These are valid governmental goals. Indeed, the goals of easy service were a major reason for the Legislature’s decision in 1968 to enact Multiple Dwelling Law § 325 (2) which prevents the collection of rent while there is no effective registration. (See, Memorandum of Legislative Representative of City of New York, 1968 McKinney’s Session Laws of NY, at 2317.) The cases have consistently applied the statutory sanction or noncompliance. (E.g., Giammona v Diesenhouse, NYLJ, Dec. 21, 1984, p 15, col 1 [App Term, 2d & 11th Dists]; Corbin v Harris, 92 Misc 2d 480 [Sup Ct, Kings County 1977]; Rosgro Realty Co. v Braynen, 70 Misc 2d 808 [App Term, 1st Dept 1972], affd sub *377 nom. Grosfeld v Braynen, 41 AD2d 605 [1st Dept 1973]; Normal Realty Co. v Rios, supra; Lipkis v Pikus, 96 Misc 2d 581, 593 [Civ Ct, NY County 1978]; see also, Administrative Code § D26-41.21 [b].)
The legislative test for the presence of the managing agent within the City has been strengthened over the years. The 1955 Multiple Dwelling Code, at section D26-3.1 (a) (3), required that a managing agent, not resident in the City, must be “customarily present in the city for the transaction of business.” That language was changed when the Housing Maintenance Code was adopted in 1967 and the present version, “customarily and regularly attend a business office,” substituted. The City Council obviously was trying to increase the contacts an agent has with the City in order to make City’s and tenants’ contacts with the agent easier.
The court concludes that the Legislature was using the terms “customarily and regularly attend a business office” in the sense that it is more likely than not that the managing agent be available during normal business hours for contact by the tenants on governmental agencies. A business which functions only after normal hours could not be said to comply. Greenberg’s argument that the terms only require a “routine” attendance at an office in the City misses the mark. “Routine” attendance from midnight to 8:00 a.m. would be at odds with the legislative purpose and would be insufficient.
The legislation does not require that the people who actually work on the building be located within the City. Nor does it require that the agent spend a given amount of time in the office. What is required is that the individual managing agent, who is personally responsible for maintaining the building, for emergency repairs and for service of process, be available to tenants and the government. A “mail drop” or an office used for the transaction of a real estate business unrelated to the management of the building is, simply, not compliance.
In. the case at bar, it is clear that Greenberg, a nonresident, who apparently pays no New York City taxes on his business as a managing agent, is trying to evade the spirit of the law. He cannot be located in the ordinary course of business dealings at his so-called New York City office. The rent bills, in violation of law, do not disclose his name and New York City address. (See, Administrative Code § D26-41.17.) The registration sign posted in the lobby of the building (see, Administrative Code § D2641.15) contains the Port Washington address and telephone number. In fact, Greenberg is not listed in the Manhattan *378 telephone directory. There is not even an attempt at substantial compliance with the law, only a nominal effort. (Compare, Lazarus v Liebowitz, supra; Rosenberg v Suares, 105 Misc 2d 611 [Civ Ct, NY County 1980]; Washington Sq. Professional Bldg, v Leader, 68 Misc 2d 72 [Civ Ct, NY County 1971].)
Greenberg argues that so long as there is a telephone number of a location within 50 miles of the City on file with DHPD as required by section D26-41.03 (a) (4) he is in compliance with the law since the Port Washington office is within that range. That section provides that “[t]he telephone number contained in the registration statement shall not constitute a public record and shall be accessible only to duly authorized employees or officers of the department and used exclusively by such personnel in connection with an emergency arising on the premises”. Thus, the purpose served by DHPD access for physical emergencies, is totally different from that of the managing agent being accessible to tenants, process servers, and others, within the City. There is no basis whatever for Greenberg’s conclusion that the section authorizes managing agents to have offices outside the City.
Thus, the court concludes on the evidence at trial that Green-berg is not qualified to be a managing agent of the premises at issue. An appropriate injunctive order will be entered together with a $250 fine as required by section D26-41.21 (a).