OPINION OF THE COURT
Lewis R. Friedman, J.
At the trial of this action the court concluded, inter alia, that the respondent Mark Greenberg did not meet the requirements of Administrative Code of the City of New York § D2641.03 (a) (3) to serve as the managing agent for a New York City multiple dwelling. (Amsterdam v Goldstick, 128 Misc 2d 374 [Civ Ct, NY County 1985].) In this motion, denominated as one for "reargument”, Greenberg contends that the Administrative Code provision, as interpreted by the court, violates *132 the "privileges and immunities” clause of the United States Constitution and the analogous provision of the New York Constitution. The motion presents important constitutional issues which have not been previously decided.
THE MOTION TO "REARGUE”
At trial Greenberg’s only defense to the allegation that, as a nonresident of New York City, he did not "customarily and regularly attend a business office maintained” in the city as required by law was that, in fact, he did maintain an office that was adequate. The court rejected Greenberg’s factual defense and noted "Respondents do not argue that the requirement that Greenberg be available within the City is unreasonable or unduly burdensome. Indeed Greenberg does not challenge the requirement but instead, contends that he complies with it.” (Amsterdam, v Goldstick, supra, at p 376.)
The issue is whether Goldstick has presented a proper basis for reargument; that is, should a constitutional question be allowed to be raised for the first time after a party has lost on its nonconstitutional defense at trial. The Appellate Division in this department has made it crystal clear that a reargument motion is not to be used as a vehicle for raising new issues. Reargument does not "serve to provide * * * an opportunity to advance arguments different from those tendered on the original application.” (Foley v Roche, 68 AD2d 558, 567-568 [1st Dept 1979]; 300 W. Realty Co. v City of New York, 99 AD2d 708 [1st Dept 1984]; Pro Brokerage v Home Ins. Co., 99 AD2d 971 [1st Dept 1984].)
Goldstick contends that he did not raise the objection at trial since "statutes are presumed constitutional, it was Greenberg’s reasonable presumption that the interpretation of the statute would in turn be constitutionally correct.” That argument is to no avail. Greenberg is arguing, in effect, that he can raise the constitutional argument now because he lost on the merits of the defense he presented in the first instance. That is not the law; issues, including constitutional ones, not raised at trial are waived. (See, e.g., Friends of Earth v Carey, 552 F2d 25, 35 [2d Cir 1977], cert denied 434 US 902 [1977]; Vargas v Trainor, 508 F2d 485 [7th Cir 1974], cert denied 420 US 1008 [1975]; Agur v Wilson, 498 F2d 961 [2d Cir 1974], cert denied 419 US 1072 [1974]; Matter of Fabric Tree, 426 F Supp 872 [SDNY 1977].)
In the ordinary course of events, the motion should be *133 denied without reaching its merits. However, the issues tendered go to the constitutional heart of the statute. Also there are numerous other cases pending before this court which involve the same statutory provision; indeed, there are other cases before this court in which Greenberg’s status as a managing agent is in issue. The merits of the constitutional issues will, therefore, be reached.
It appears, however, that there are certain constitutional facts which were not adequately litigated at trial. For example, there is a substantial dispute as to where Greenberg resides — Torrington, Connecticut, as he claims, or Great Neck, New York, minutes from his office in Port Washington, where he maintains what he described in the companion motion as a pied-á-terre. Also, Greenberg alleges that his livelihood is threatened if he cannot serve as a managing agent. There is no proof in the record to support that claim; there is some proof that his main employment is the sale of apartments and otherwise acting as a licensed real estate broker. Those are issues which will have to be resolved at a further hearing if the appeal, which is certain to be taken from this decision, concludes that the statute as written has a substantial facial constitutional infirmity. Accordingly, this decision is based on the facts submitted by Greenberg at this time since they present the issues most clearly.
It is apparent that the proper procedure after a trial but before a judgment has been signed is to move under CPLR 4404 (b) and 4405 for a new trial, rather than for reargument. In any event the court will overlook the procedural infirmities.
The motion to reargue is granted.
THE CONSTITUTIONALITY OF ADMINISTRATIVE CODE § D26-41.03 (a) (3)
Greenberg argues that Administrative Code § D26-41.03 (a) (3) is unconstitutional since it deprives him, a resident of Connecticut, of his right to earn a livelihood. The court previously interpreted the section as requiring that a nonresident managing agent of New York City multiple dwellings "customarily and regularly attend” an office for the conduct of business in the city and that the office be a bona fide one at which the managing agent could be found. That is, "that it is more likely than not that the managing agent be available during normal business hours for contact by the tenants [or] *134 governmental agencies.” (Amsterdam v Goldstick, supra, at p 377.) Even on the motion to reargue Greenberg does not "challenge the constitutionality of Section D26-41.03 (a) (3) when properly construed”; his only challenge is to the court’s requirement that the office be one for the bona fide conduct of business as a managing agent.
It is important to note that the statute at issue here does not preclude nonresidents from earning a living by serving as managing agents of New York City multiple dwellings. All that the statute requires is that they have a business office within the city where they can reasonably be expected to be available during the business day.
It has continually been held that lower courts are constrained to uphold the constitutionality of State statutes if at all possible. That is, a statute’s unconstitutionality must be shown beyond a reasonable doubt. (Defiance Milk Prods. Co. v Du Mond, 309 NY 537, 540-541 [1956]; I.L.F.Y. Co. v Temporary State Hous. Rent Commn., 10 NY2d 263, 269 [1961]; Hotel Dorset Co. v Trust for Cultural Resources, 46 NY2d 358, 370; Matter of Brown-Forman Distillers Corp. v State Liq. Auth., 100 AD2d 55, 59-60 [1st Dept 1984].) Greenberg does not meet that test.
Federal constitutional analysis starts with article IV, § 2, which provides that the "Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States.” The statute at issue applies to all nonresidents of the city including residents of the State as well as nonresidents. Does that take the statute at issue here out of the reach of the privileges and immunities clause? While a nonfrivolous argument can be made on the face of the Administrative Code section that it discriminates against Yonkers residents as much as Connecticut residents, the Supreme Court has put the issue to rest in United Bldg. & Constr. Trades v Mayor (465 US 209, 217-218 [1984].) "We conclude that Camden’s ordinance is not immune from constitutional review at the behest of out-of-state residents merely because some in-state residents are similarly disadvantaged” (pp 217-218).
The Supreme Court has long held that the privileges and immunities clause was "intended to create a national economic union.” (Supreme Ct. of N. H. v Piper, 470 US 274, 280 [1985]; Baldwin v Montana Fish & Game Commn., 436 US 371, *135 386 [1978]; Toomer v Witsell, 334 US 385, 396 [1948].) Cases interpreting that clause have held that it applies to the right of citizens of one State to do business in another State "on terms of substantial equality with the citizens of that State.” (Toomer v Witsell, 334 US, at p 396.) Thus, the Supreme Court has rejected higher license fees for nonresident fishermen (Ward v Maryland, 12 Wall [79 US] 418 [1870]) and hiring preferences for residents. (Hicklin v Orbeck, 437 US 518 [1978].) The court has applied the privileges and immunities clause to rights "fundamental” to the national union.
Is the right to be a managing agent of New York City residential multiple dwellings such a "fundamental” right? "Certainly, the pursuit of a common calling is one of the most fundamental of those privileges protected by the Clause.” (United Bldg. & Constr. Trades v Mayor, 465 US, at p 219.) The practice of law is such a calling. (Supreme Ct. of N. H. v Piper, supra.) The opportunity to seek employment from a contractor doing business with a city is such a calling. (United Bldg. & Constr. Trades v Mayor, 465 US, at p 221; cf. Baldwin v Montana Fish & Game Commn., 436 US, at p 388.) The operative test seems to be whether the right to be employed at an occupation is sufficiently crucial to the national economy as to warrant protection. (Compare, Hawaii Boating Assn. v Water Transp. Facilities Div., 651 F2d 661 [9th Cir 1981] [mooring privileges].)
This court concludes that serving as a managing agent is a substantial right. "The privileges and immunities clause clearly extends unique protection to nonresidents who wish to engage in their chosen occupation and earn a livelihood within the state on an equal basis with residents.” (Stalland v South Dakota Bd. of Bar Examiners, 530 F Supp 155, 158 [DSD 1982].) Certainly serving as a managing agent is a "common calling” or "chosen occupation”. Acting as a managing agent is the type of economic interest protected by cases such as Baldwin v Montana Fish & Game Commn. (supra), Hicklin v Orbeck (supra), Toomer v Witsell (supra) and Supreme Ct. of N. H. v Piper (supra).
The conclusion that the statute at issue discriminates, albeit in a limited way, against nonresident managing agents does not end the inquiry. The privileges and immunities clause is not an absolute bar to discrimination. "The Clause does not preclude discrimination against nonresidents where: (i) there is a substantial reason for the difference in treatment; and (ii) the discrimination practiced against nonresidents bears a *136 substantial relationship to the State’s objective.” (Supreme Ct. of N. H. v Piper, 470 US, at p 284; United Bldg. & Constr. Trades v Mayor, 465 US, at p 222; Salorio v Glaser, 93 NJ 447, 461 A2d 1100, 1103 [1983]; Matter of Gordon, 48 NY2d 266 [1979].) That two-pronged test must be applied to Administrative Code § D26-41.03 (a) (3).
In the prior decision the court held that the Legislature had several goals in enacting the statute: (1) to overcome the unavailability of persons responsible for maintenance and operation of multiple dwellings; (2) to allow tenants and governmental officials to contact the responsible person; and (3) to allow for ease of service of process pursuant to CCA 110 (m). (Amsterdam v Goldstick, 128 Misc 2d, at p 376.) These goals are "substantial” within the Supreme Court’s test. The physical availability of the person with legal responsibility for a multiple dwelling is crucial for the proper operation of the property. Absentee managers were found to be such a problem that the Legislature enacted the statutory scheme that prevents unregistered agents from collecting rent in summary proceedings. (See, Multiple Dwelling Law § 325 [2].)
The evil the statute is aimed at is the manager’s lack of nexus to the city where the property is located. (See, People v Chodorov, 12 NY2d 176, 180 [1962].) It is reasonable to require, as section D26-41.03 (a) (3) does, either a New York City residence, at which one can presumably be located, or a bona fide New York City office, at which one can presumably be reached. The case differs from Supreme Ct. of N. H. v Piper (supra) and Matter of Gordon (48 NY2d, at pp 273-274), where Bar admission residence rulés were invalidated. In the Bar admission cases the State offered no reason why the residence rule had any relation to the exclusion of nonresidents. Here physical access to the manager is the primary purpose of the statute. It follows that the limited discrimination bears a substantial relation to the State’s objective. That is, restricting nonresidents who can serve as managing agents to those who maintain a bona fide office in the city directly bears on the objective of making agents available to the tenants whose apartments they manage and the governmental officials responsible for their regulation.
It is not an unreasonable burden to place on persons who seek to use the city as the place to earn a living that they actually use the city for the conduct of their business and, parenthetically, pay city taxes. (See, e.g, Watts v McGuire, 102 *137 Misc 2d 711 [Sup Ct, NY County 1979].) The statute passes constitutional muster as imposing the least restrictive means to meet its goals. (See, Supreme Ct. of N. H. v Piper, supra; Toomer v Witsell, supra; Matter of Gordon, supra.)
In Gordon the Court of Appeals suggested as constitutionally permissible the practice of requiring nonresidents to appoint resident agents for the service of process. (48 NY2d, at p 274.) Similarly in White Riv. Paper Co. v Ashmont Tissue (110 Misc 2d 373 [Civ Ct, Bronx County 1981]) the court upheld the constitutional validity of the requirement that nonresident attorneys maintain a New York office. The statute here does no more than require the owner of a multiple dwelling to appoint as the agent for the service of process and the receipt of tenant and governmental papers either a resident or a person who actually works in the city. As noted in the court’s original decision (128 Misc 2d, at p 377) Greenberg, as a nonresident who maintains that he does not carry on a business inside the city, pays no city taxes. In White Riv. Paper Co. v Ashmont Tissue (supra) the court pointed out that to permit a nonresident to avoid the expense and concomitant taxes of a New York office might well be discrimination in the nonresident’s favor.
Greenberg also argues that the statute violates NY Constitution, article I, § 1. That section provides, in pertinent part: "No member of this state shall be * * * deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land”. The simple answer to Greenberg is that he claims that he is not a resident of this State and, therefore, cannot raise claims that might be available to a resident. In any event, the claim lacks merit. The analysis, which shows that the section does not violate the Federal privileges and immunities clause, shows that there is no violation of the State Constitution by the exclusion of nonresidents of the city who live elsewhere in the State. The statute’s clear validity may well explain why there are no cases invalidating statutory requirements such as the Administrative Code section involved here.
In short, the statute at issue is a reasonable one that does not violate the privileges and immunities clause of the Federal Constitution.
After reargument the court adheres to its original determination.