OPINION OF THE COURT
Theodore Diamond, J.
See "order on application for default judgment” of September 26, 1986.
*304 A Civil Court Judge assigned to Part 18 is required, inter alia, to initial a judgment in a nonpayment summary proceeding after respondent has failed to answer (for whatever reason), and a marshal applies for a warrant of eviction (at petitioner’s request). This is commonly referred to as "signing warrants”. What is our obligation?
1. Directive 509 (May 1979) says we should sign the judgment "unless such petition or its service is defective.”
2. Central Park v Ramos (NYLJ, Apr. 9, 1984, p 12, col 6 [App Term, 1st Dept]) says "mere irregularity or minor omission in landlord’s submission is not a proper predicate upon which to refuse to enter a default judgment”, but also says
3. "If * * * a true jurisdictional defect taints a proceeding, final judgment in landlord’s favor may not be entered upon tenant’s default,” and "judges assigned the task of entering applications for entry of default final judgments in nonpayment proceedings do not function as mere automatons. They should examine the pleadings * * * and identify patterns of fraud which may become apparent in the course of dealing with large numbers of proceedings.” Sobeit, bearing in mind that for many good reasons, petitions in summary proceedings (which admittedly are not always "summary”) should be kept to reasonably high standards of accuracy (Siegel, NY Prac § 574).
On Friday, September 26, my law assistant scrutinized 154 default judgments presented for signature. Twenty-eight petitions allege they were not covered by the Uniform Rules for the New York State Trial Courts (22 NYCRR — Civil Court) § 208.42 (b), and we checked no further. Sixty-eight of the RPAPL 711 cases alleging multiple dwelling registration appeared to be without defects, and were not checked further.
The petitions must allege that there is a currently effective multiple dwelling registration statement on file. This language appeared on every printed form petition, and it refers to designation of a "managing agent named below”. We did not check this against the Department of Housing Preservation and Development (HPD) computer; after all, landlord may have recently filed a new registration that is not in HPD’s databank.
The rule requires the petition to allege "the registered managing agent’s name.” Two had no name at all; one had only a first initial. Neither tenants, nor HPD if it accepts incomplete registrations, should have to guess whether the *305 agent "C. Griffiths”, is Charles, Calvin, Carlotta or Corrine. The HPD registration form has plenty of room to fill in a complete name for the managing agent, and in the absence of any reason to conclude otherwise, absence of a full name in the appropriate place on the petition does not comply with Multiple Dwelling Law § 325 (1), Administrative Code of the City of New York § D26-41.03 (a) (3), and 22 NYCRR 208.42 (g). HPD and tenant are entitled to the full name of the person designated as registered managing agent in control of and responsible for, building maintenance, operation, and emergency repairs (Administrative Code § D26-41.03 [a] [3]).
Then we dealt with addresses, which are very important (see, the five-day requirement for owner address changes, Administrative Code § D26-41.07).
Seven petitions had addresses outside New York City; one from New Jersey. This may be allowed under Multiple Dwelling Law § 325 (1), but not Administrative Code § D26-41.03 (a) (3) . The HPD registration form specifies that the managing agent "must live in or have office in New York City”. City law can have stricter registration requirements than the Multiple Dwelling Law (Schildhaus v Gilroy, 22 Misc 2d 524 [Sup Ct 1959]); and our highest court has approved a city law requiring an owner or agent to have a New York City address (People v Chodorov, 12 NY2d 176 [1962], interpreting the legislative intent in a Multiple Dwelling Code provision enacted in 1955, Administrative Code former § D26-1.0). A full rationale for New York City addresses is found in Amsterdam v Goldstick (128 Misc 2d 374 [Civ Ct 1985]).
This is different from the authorization that allows landlord/agent to file a confidential telephone number that is outside New York City (Administrative Code § D26-41.03 [a] [4] ; note § D26-41.17 which requires rent bills to have the "New York City address of the managing agent * * * as recorded in the current registration statement”).
22 NYCRR 208.42 (g) requires a "residence or business address of said managing agent.” The concept of address necessarily implies the ability to locate it, whether by showing borough, county, or zip code. There are "East 15 Streets” in Manhattan and Brooklyn, a "Broadway” in Brooklyn, Manhattan and Bronx. Is the tenant likely to know that "Laurel-ton” is in Queens? Thirty-two had incomplete addresses. Fifteen had incomplete names and incomplete addresses.
Thirteen petitions used post-office boxes which, by definition, *306 cannot comply with 22 NYCRR 208.42 (g) because the managing agent does not live or ordinarily work in a post-office box. The agent is required to be available at the registered address (Department of Hous. Preservation & Dev. v Arick, 131 Misc 2d 950 [Civ Ct 1986]; Amsterdam v Goldstick, supra). If a " 'mail drop’ * * * is, simply, not compliance” (Amsterdam v Goldstick, supra, p 377), a post-office box is worse. Moreover, some petitions make it impossible to know where the box is. Three petitions had only "P.O. Box 352”. Some additional information was inadequate. Many tenants do not know where "Vandeveer Station” is. Does "Mid. Sta.” refer to a Midwood Post Office in Brooklyn, the railroad station in Midland, Ontario, or a location in Middleton, England? For a critique of post-office boxes in another context, see Citibank v Gillaizeau (NYLJ, Aug. 21, 1986, p 4, col 3 [Civ Ct]).
There is another reason for having complete information in the petition. Registered managing agent information is for purposes of HPD housing code enforcement (Multiple Dwelling Law §§ 326, 309; CCA 110 [a], [m]; Lazarus v Liebowitz, 85 Misc 2d 822 [Civ Ct 1976]; RPAPL 771).
Also, it shows where tenants can serve papers in tenant-initiated "HP” actions to correct violations (Administrative Code § D26-51.01 [h]; CCA 110 [a], [m]); or RPAPL art 7-A proceedings. Lazarus v Liebowitz (supra, at p 827) included "enable tenants and governmental authorities to readily contact owners or persons responsible”. This not only applies to tenant actions, but to tenant complaints (Amsterdam v Goldstick, supra, at p 377; and see, HDA comments on its registration rules in Civil Court Directive 94 of Sept. 19, 1969, "to notify those in charge * * * of tenant’s complaints * * * affirm and strengthen the landlord-tenant relationship, by making available to tenants a * * * name and address * * * tenants may utilize to request repairs and service ... to contact their landlord prior to bringing matters to the attention of governmental agencies”).
There is no authority that a purpose of the registered managing agent’s address is for tenants, or anyone else, to serve process (except for code enforcement purposes). The Multiple Dwelling Law first enacted (L 1929, ch 713) included a section 325 on owner registration; and a section 326 about filing a notice with the name and address of an agent "for the purpose of receiving service of process”. This language was removed when it was reenacted (L 1946, ch 950); and the managing agent language added to section 325. In dicta, we *307 recently find, "the purpose served by DHPD access for physical emergencies, is totally different from that of managing agent being accessible to tenants, process servers, and others, within the City” (Amsterdam v Goldstick, supra, at p 378). This concept should be recognized. A comprehensible address is needed for service of tenant’s orders to show cause in appropriate cases. Tenants are told to serve landlords’ lawyers, but some have offices outside the city. Some petitions and notices of petitions do not have a lawyer’s name and address. And some tenants go to such offices and are told, "We no longer represent him and cannot accept process”, or "We only prepared the dispossess.”
Another tenant alternative is to look at the landlord’s "business address” which is supposed to appear next to the caption in the petition (22 NYCRR 208.42 [d]). It often is absent. Also, this "business address” may be outside the city; indeed, that is legal.
I decline to sign default judgments where the registered managing agent information (name and address) does not comply with court rule; without prejudice to petitioners moving to amend their petitions, or placing cases on a calendar so they can be amended at trial or inquest. It would be inappropriate to dismiss the cases. So long as the building’s managing agent is registered, the defect is curable.
When questioned, landlords occasionally said that proper managing agent addresses do appear on the registration forms filed with HPD, but that post-office boxes were put on the petitions because they "don’t want those people” coming to their offices. That is not unreasonable, but unfortunately improper.
In a case where the agent’s name and address were ambiguous, the landlord had to come forward. "[I]t would not be just to resolve in its favor the very issue which it was petitioner’s burden to meet * * * petitioner should not be permitted to flaunt the multiple dwelling registration statutes” (Normal Realty Co. v Rios, 109 Misc 2d 555, 558 [Civ Ct 1981]).