OPINION OF THE COURT
Lewis R. Friedman, J.
These five cases, consolidated solely for the purposes of this decision, present common important questions of law. In each of the cases service of process was questioned; in each, process was re-served. The issues presented are the actions to be taken by a party which re-serves process before any decision is rendered on a claim of improper service. If a second process is permitted, where may it be served? May it be served in the courtroom or its vicinity? May process be served on a witness who is on the stand testifying to the invalidity of the prior service? These questions, which have been raised in other cases before this court, do not appear to have been resolved in previously reported cases.
*895 THE FACTS
The Department of Housing Preservation and Development (DHPD) commenced each of these proceedings to obtain orders pursuant to Administrative Code of the City of New York, Housing Maintenance Code (HMC) §§ D26-51.03 and D26-53.01 to compel each of the respondents, "owners” of residential property in New York City (see, HMC § D26-1.07 [45]), to provide heat and hot water as required by law and to pay civil penalties for heat and hot water violations placed on the buildings. The order to show cause and petition which initiated the cases were, in each instance, served by other than personal delivery. Each respondent interposed a jurisdictional objection. A subsequent order to show cause and petition (the second OSC) was served in each matter. The second OSC’s each sought the identical relief and carried the same index number as the original papers.
In Miranda, Brown and Koenigsberg DHPD counsel served the respondent with the second OSC in the courtroom or its vicinity; in Marceca the second OSC was served by a process server prior to the hearing. In Graci the second OSC was served while the respondent was actually testifying to the invalidity of the first service.
Each respondent has moved to dismiss the "second” proceeding on the ground of "prior action pending” (CPLR 3211 [a] [4]) and each has requested a factual hearing on the validity of the first service. Several respondents also seek dismissal on the grounds that service in the courtroom or on the witness stand is defective.
PRIOR ACTION PENDING
Each of the respondents argues that dismissal is required by CPLR 3211 (a) (4). "Automatic” dismissals are neither mandated nor warranted. The Court of Appeals has recently held that "CPLR 3211 (subd [a], par 4) vests a court with broad discretion in considering whether to dismiss an action on the ground that another action is pending between the same parties” (Whitney v Whitney, 57 NY2d 731, 732 [1982]; see, Ackerman v Vertical Club Corp., 94 AD2d 665, 666 [1st Dept 1983] [the trial court "may make such order as justice requires”]; Key Bank v Lake Placid Co., 103 AD2d 19 [3d Dept 1984] ["(dismissal on such ground is not automatic”]). The CPLR provides that "the court need not dismiss on this ground but may make such order as justice requires”.
*896 Sound policy supports petitioner here. Each respondent is arguing inconsistently; that posture is prohibited by the courts (Ferrandino v Cartelli, 12 AD2d 604 [1st Dept]). "Defendant may not have it both ways. He may not assert that an action has not been properly commenced due to defective service and, at the same time, allege that the action is, nonetheless, a pending action when there is reservice to cure the jurisdictional defect complained of (see Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3211:16, C3211:41).” (Dashew v Cantor, 85 AD2d 619 [2d Dept 1981].)
The service of the second OSC in these proceedings was the equivalent of service of a second summons in a plenary action. The court held in Heusinger v Russo (96 AD2d 883 [2d Dept 1983]) "this did not constitute the commencement of a second action.” "Plaintiffs’ successive efforts to serve defendant were directed to the proper commencement of only one action.” (Dashew v Cantor, supra.) Respondents here are each required to defend only one action. The second service was merely a method for curing a potential jurisdictional impediment. (See, Helfand v Cohen, 110 AD2d 751 [2d Dept 1985]; contra, Mayline Co. v Liebman, 118 Misc 2d 251 [Civ Ct, NY County 1983].)
Disposition of cases on the merits is favored. Where, as at bar, there are allegations of a lack of heat and hot water, petitioner and the public interest should not be required to await the outcome of protracted hearings on the validity of service before curing potential service defects. "Plaintiffs should be encouraged to correct service problems at the earliest stage possible.” (Alderman Co. v American Sleeping Sys. Corp., 120 Misc 2d 878, 880 [Civ Ct, NY County 1983].)
Respondents in each case seek a hearing on the validity of the service of the original papers. Those issues are now moot. The court has proper jurisdiction as a result of the second service in four of these cases; it is, in those cases, irrelevant whether the first service was proper. Despite respondents’ arguments, there is no societal value in a determination after an evidentiary hearing whether proper procedures were used to effectuate the first service where there is no challenge to the second service. Service of process is to acquire jurisdiction over a defendant and serve notice of the proceeding; it is not a vehicle for the conduct of extensive, unnecessary hearings in an effort to "keep petitioner honest”. The court has adequate means to control litigants who abuse *897 the law by intentional improper service; there is no proof of that abuse here.
SERVICE IN THE COURTROOM
The challenge to the second service in four of the cases is based on an asserted immunity from service in the courtroom or its vicinity. There does not appear to be any recent reported authority on the subject in this State.
Respondents argue that they are entitled to immunity from reservice since they were in court solely to testify to the invalidity of the initial service. Clearly the law recognizes that the service of process can be challenged without risk of the party submitting to the court’s jurisdiction. The immunity which respondents seek to invoke here has long been recognized but applies only to nonresident witnesses or parties who come into the State voluntarily to testify. (See, Person v Grier, 66 NY 124, 126 [1876]; Matthews v Tufts, 87 NY 568 [1882]; Parker v Marco, 136 NY 585 [1893]; Petrova v Roberts, 245 NY 518 [1927]; Hollander v Hall, 11 NYS 521 [Sup Ct, 1st Dept 1890]; People ex rel. Hess v Inman, 74 Hun 130 [3d Dept 1893]; Brett v Brown, 13 Abb [NS] 295; People v Aloi, 74 Misc 2d 263 [Nassau County Ct 1973]; Terlizzi v Brodie, 38 AD2d 762 [2d Dept 1972]; see, Thompson's Case, 122 Mass 428.) The basis of the rule is the concept that a party should be allowed to contest jurisdiction without risk.
Similarly, process has been held invalid because the party, although a resident of the State, had voluntarily come within the jurisdiction of a court of limited territorial jurisdiction. (Palazzo v Conforti, 50 NYS2d 706 [City Ct, Bronx County 1944]; People ex rel. Hess v Inman, supra; Pritsch v Schlicht, 5 NY St Rep 871; Singer v Reising, 154 Misc 239 [Mun Ct, Queens County 1935]; see, Sebring v Stryker, 10 Misc 289, 291 [Steuben County Ct 1894].) The jurisdiction of the Civil Court is, of course, not limited to service within the county.
The rule has long been different with respect to New York State residents — a resident is subject to the court’s jurisdiction and receives no immunity simply for appearing in response to process. (See, e.g., Frisbie v Young, 11 Hun 474; Sheldon v Wakely, 3 NY Mo Law Bull 94 ["residents have no immunity from service of summons because they happen to be attending as witnesses when served”]; Flechter v Franko, 15 NYS 674 [Ct of Common Pleas, NY County 1891].) The resident is, at all times, subject to the court’s jurisdiction. (Rosenblatt v Rosenblatt, 110 Misc 525 [Sup Ct, Kings County 1920].)
*898 The cases at bar differ from all the reported cases: each of the respondents has registered with DHPD as required by HMC article 41. A registered managing agent "shall be a natural person over the age of twenty-one years and shall reside within the city or customarily and regularly attend a business office maintained within the city” (Administrative Code § D26-41.03 [a] [3]). One of the purposes of the statute is to insure ease of service of process. (See, Amsterdam v Goldstick, 128 Misc 2d 374, 376 [Civ Ct, NY County 1985]; Amsterdam v Goldstick, 131 Misc 2d 131, 136 [Civ Ct, NY County 1986].) CCA 110 (m) makes the registered address, which is, of necessity, within the court’s territorial jurisdiction the place for "substituted” or "conspicuous place” service. Respondents here cannot, therefore, complain that they were lured into the court’s jurisdiction or that they are, somehow, immune from service.
The question remains whether the courthouse precincts are sacrosanct. In Baumgartner v Baumgartner (273 App Div 411 [1st Dept 1948]), the court was confronted with a contempt conviction of a young attorney for serving process in one of the hallways of the Domestic Relations Court. The court reversed, holding "it is not unlawful to effect service of a summons on a resident defendant in a courthouse building”. That conclusion was based on Frisbie v Young (supra), where the defendant had been testifying when he was served. It appears, therefore, that historically no "courthouse sanctuary” was recognized where the party is a New York resident.
This court echoes the sentiments of the Appellate Division when it said that "[t]his court does not look with favor on the service of civil process in any part of a courthouse building unless there is some compelling reason for such service” (Baumgartner v Baumgartner, 273 App Div, at p 412). In the cases at bar no compelling circumstance, other than attorney convenience, has even been suggested. Surely there was no "compelling circumstance” for the service of process to the witness who was being cross-examined when the second OSC was served. Compelling circumstances are required in order to offset the substantial risks presented by courthouse service.
The service of process in the courthouse is likely to provoke disturbances and breaches of the court’s rules of decorum. In one of the cases at bar, process was served in the rear of the courtroom and the court became aware of the incident through the loud reaction by the respondent and his counsel. The court in Baumgartner v Baumgartner prohibited court *899 house service if "it is done under such circumstances as constitute a disturbance directly tending to interrupt the proceedings of the court or to impair the respect due to its authority” (273 App Div, at pp 412-413). The experiences in the cases at bar support the conclusion that disturbance is not a mere theoretical possibility.
This court will not countenance any future behavior which threatens courtroom decorum. Judiciary Law § 750 (A) authorizes summary criminal contempt for "1. Disorderly, contemptuous or insolent behavior, committed during [the court’s] sitting in its immediate view and presence, and directly tending to interrupt its proceedings, or to impair the respect due to its authority * * * 2. [b]reach of the peace, noise, or other disturbance, directly tending to interrupt its proceedings”. The service of process under circumstances such as those at bar may well give rise to imposition of appropriate sanctions. Baumgartner v Baumgartner (supra) does not prohibit the use of the contempt powers of the court in those instances.
CONCLUSION
The court disapproves of the manner of the service of process in the four cases where it was accomplished in the courthouse; however, the disapproval does not deprive the court of jurisdiction. The actions will not be dismissed.
The cases are all restored to the calendar for December 8, 1986. A hearing on the validity of service will be held in the Marceca case. The motions to dismiss the other actions are each denied.