*832 OPINION OF THE COURT
Lewis R. Friedman, J.
This case was initiated by pro se tenants to obtain correction of the violations at the premises and to seek the imposition of civil penalties. After a trial on the injunction questions, the court issued an order requiring the violations referred to in the petition to be removed and determined that Mark Green-berg was not qualified to serve as managing agent. (Amsterdam v Goldstick, 128 Misc 2d 374, rearg granted and original determination adhered to 131 Misc 2d 131.) During the subsequent trial of the civil penalties issues, a stipulation of settlement was executed by the owners and the Department of Housing Preservation and Development (DHPD). The petitioning tenants object to the court’s approval of the stipulation. The case presents issues- questioning the nature of "tenant-initiated” actions under the Housing Maintenance Code.
The Housing Maintenance Code, in a series of sections added when the Housing Court was created in 1972 (see, L 1972, ch 982, amended by L 1974, ch 865), created a structure for code enforcement by the issuance of violations and the imposition of "civil penalties”. Part of that enforcement mechanism allows actions to be brought by tenants or groups of tenants to remedy conditions in their buildings. If a violation has been issued by DHPD and it has not been corrected (or there has been a false certification of correction) or there is "a condition constituting a violation”, the court "shall direct the owner to correct” the condition or violation. (Administrative Code of City of New York § 27-2115 [f] [4]; [h], [i].) Pursuant to those provisions, thousands of tenant-initiated actions, known as "HP” or Housing Part actions, are commenced yearly. The court can, and regularly does, issue orders directing "owners”, as that term is defined (Administrative Code § 27-2004 [45]; Multiple Dwelling Law § 4 [44]), to remove violations or "conditions constituting violations” at the premises. (See, Various Tenants of 515 E. 12th St. v 515 E. 12th St, 128 Misc 2d 235; Rosenthal v Helfer, 136 Misc 2d 9.)
Upon the owner’s failure to remove the "conditions” or violations the court shall "assess penalties as provided in subdivision (a) of this section.” (Administrative Code § 27-2115 [i].) Administrative Code § 27-2115 (a) imposes substantial per diem penalties. These are enforced primarily by DHPD actions to recover the penalty (Administrative Code § 27-2116 [a]); the resulting judgments become liens on the property. (Adminis *833 trative Code § 27-2116 [d]; see, Housing & Dev. Admin, v Bryant Westchester Realty Corp., 90 Misc 2d 816 [App Term, 1st Dept 1977].) The statutes, in addition, permit tenants, who have initiated actions to have "conditions” or violations removed, to seek to have the court assess penalties on the owner; penalties are payable to DHPD, not to the tenants. (Administrative Code § 27-2115 [i], [h].)
Since the origin of the Housing Court, civil penalty cases, whether initiated by DHPD or by tenants, are usually resolved by negotiation providing for a penalty sufficient to deter the owner and penalize past nonperformance while insuring that the penalty does not become confiscatory. Such settlements are customarily "for an amount far less than the accumulated per diem fines”. (See, Rutzick and Huffman, The New York City Housing Court: Trial and Error in Housing Code Enforcement, 50 NYU L Rev 738, 784 [1975].) If the matter cannot be settled, the case is tried; the owner may establish statutory defenses or mitigation. (Administrative Code § 27-2116 [b].) However, the court has little or no discretionary authority to reduce fines if statutory mitigation is not proved. Indeed, in Department of Hous. Preservation & Dev. v 2025 Walton Ave. Corp. (NYLJ, Sept. 30, 1985, at 6, col 1) the Appellate Term, First Department, increased a penalty where no statutory mitigation was established.
Here, the court is confronted with this situation: DHPD and the owner have reached agreement on the amount of the penalties to be paid to DHPD — $9,750; the tenants, who initiated the action, object to the court’s ratification of the terms. The tenants assert that the penalty is inadequate and that there are other terms in the stipulation to which they do not agree.
The court concludes that the purpose of the "tenant-initiated” civil penalty action is solely to bring to the attention of the court DHPD’s failure or refusal to act. There is nothing in the legislation or its history which suggests that the "tenant-initiated” penalty action was intended to create substantive rights; rather, it appears that the civil penalty portion of the remedy was "tacked on” as a concomitant of the injunctive remedy. (See, e.g., mem in support of L 1974, ch 865, which added Administrative Code § D26-51.01 [i], now § 27-2115 [i], 1974 NY Legis Ann, at 211.) Thus, although the "tenant-initiated” action was "one of the most far-reaching innovations of the [Housing Court] Act” (Rutzick and Huffman, op. cit, at 755) there is nothing to show that the drafters intended *834 "tenant-initiated” actions to be substantively different from DHPD — initiated proceedings. In essence a "tenant-initiated” civil penalties action is derivative — the tenants are asserting a monetary claim for the benefit of DHPD.
The result in a "tenant-initiated” action should be consistent with the results produced by other code enforcement proceedings. Thus, where DHPD has initiated an action for civil penalties under Administrative Code § 27-2116 (a) and has settled it by a "so ordered” stipulation, no additional penalties are due under section 27-2115 (a). A later "tenant-initiated” action under section 27-2115 (h) or (i) could not, therefore, result in the imposition of any additional penalty. Similarly, if a "tenant-initiated” action results in a judgment in favor of DHPD, DHPD, as judgment creditor, could compromise the claim. In neither of these situations would the tenants even have had input on the disposition of the case. On the other hand the court’s approval of a DHPD-owner stipulation in a "tenant-initiated” action reaches, more directly, the same conclusion, after hearing the tenants’ views.
Sound policy considerations support the conclusion that the ultimate determination of the amount of civil penalties to be imposed should be resolvable without veto from the tenants. Often, considerations governing orderly city-wide code enforcement are more far-reaching and different from the issues in a single case. For example, tenants may "hold a grudge” against an owner and seek the imposition of confiscatory penalties without benefit to themselves.
In a civil penalties trial, service of the violations is part of the petitioning tenants’ prima facie case; however, DHPD, which has control of the witnesses and documents, must prove service. Proof of service is often complex. (See, Administrative Code § 27-2115 [b].) Use of substantial municipal resources is surely a question for DHPD to consider. Further, litigation risks for other cases is often a substantial factor in a DHPD decision to settle a particular action. The strength of the proof of service, the nature of the violations, and a sound, experienced understanding of the likely results on factual issues such as lack of access, a common owner’s defense, are all factors DHPD takes into consideration in determining whether and for what amount to settle a case. Pro se tenants may well have no cognizance of the litigation realities in a contested case; yet they may "hold out” against a reasonable settlement, whether from honest concerns or from a motive to obtain benefits in another setting such as a cooperative/condo *835 minium conversion. DHPD may properly evaluate the "general deterrence” effect a given settlement may have on other owners; that is usually not a relevant concern to tenants.
The settlement of a case without the consent of the plaintiff is unusual in the law. Yet analogies exist in other forms of derivative actions. The shareholder derivative action is in many ways similar to a "tenant-initiated” civil penalty action; the right being asserted is essentially that of a party other than the plaintiff. Although there are apparently no New York cases directly on point, there is a well-established body of law providing that a corporation may settle a derivative action without the consent of the plaintiff; those cases, however, differ on whether court approval is even required. (See, e.g., Denicke v Anglo Cal. Natl. Bank, 141 F2d 285, 288 [9th Cir 1944], cert denied 323 US 739 [1944]; Masterson v Pergament, 203 F2d 315, 330 [6th Cir 1953], cert denied 346 US 832 [1953]; Clark v Lomas & Nettleton Fin. Corp., 625 F2d 49, 52 [5th Cir 1980], cert denied 450 US 1029 [1981]; compare, Wolf v Barkes, 348 F2d 994, 997 [2d Cir 1965], cert denied sub nom. Wolf v Blair, 382 US 941 [1965] [court approval not required]; cf., Heimann v American Express Co., 53 Misc 2d 749.)
The better rule appears to be that a settlement of a derivative action without the plaintiff’s consent should only be authorized where the court has made an independent evaluation of the terms of the agreement and concludes that they are fair and reasonable under the circumstances. (See, Principles of Corporate Governance: Analysis and Recommendations [ALI Tent Draft No. 6, 1986] 7.15, and comment c; Masterson v Pergament, 203 F2d 315, 335, supra.) That rule should apply to "tenant-initiated” actions that are settled without the consent of the petitioning tenants. That is, a settlement absent consent of the tenants may be authorized and approved by the court after full consideration of the views and input of the tenants and after a determination that the proposed settlement is fair and reasonable.
The settlement here is fair and reasonable; the objections of the tenants do not require its rejection. The proposed settlement is based on a realistic evaluation of the risks of continuing the litigation. In light of some of the developments at the trial, it was reasonable for DHPD to avoid resolution of certain legal questions which have ramifications far beyond the case at bar. The settlement of the civil penalties claim for $9,750 seems justifiable in light of the size of most settlements before this court over the past several years. The amount *836 sought in the original action, $300,000, was far in excess of most awards in this court. The court can conclude from the proof admitted at trial that a portion of that sum is most likely not recoverable. Indeed, that the tenants now seek a penalty "in excess of $20,000” makes it clear that the $300,000 originally sought is excessive.
The settlement also provides that the owner will remove all of the violations at the premises, including those which were not the subject of the original action; this result was not possible under the action tried before the court. The tenants further seek acknowledgment that the owners are in contempt of the court’s earlier order; of course, that is also not a possible outcome of this proceeding. The suggestion that DHPD should file a lis pendens is unreasonable; the statute that authorizes the notice of pendency (Administrative Code § 27-2113 [a]) applies only where DHPD has initiated the action. (See, Shihab v 215-217 W. 108th St. Assocs., 133 Misc 2d 145.) The tenants’ demand that the owner post a $50,000 bond to insure compliance is unreasonable. The only provisions for bonds or similar security in the code enforcement statutes are RPAPL 777, applicable only to proceedings for the appointment of administrators, and RPAPL 755, applicable to rent actions. In short, the tenants are seeking to use the civil penalty action as a club to obtain results which are beyond the scope of a "tenant-initiated” proceeding under the Housing Maintenance Code.
Simply put, the court finds the settlement reasonable and appropriate under all of the circumstances which have been disclosed on the instant application and the two trials. The stipulation will be "so ordered” by the court.