OPINION OF THE COURT
John A. Milano, J.
issue:
Is a landlord precluded from collecting rent from a tenant who occupies a legal apartment in a two-family house presently occupied by three families because of the provisions of section 325 of the Multiple Dwelling Law?
facts:
Petitioners and respondents, by their attorneys, submit an agreed statement of facts. Petitioner landlord in this nonpayment proceeding sued the tenant for rent arrears for the period September, 1982 through January, 1983 for a monthly rental of $620 for a total of $3,100. The premises are a legally constituted two-family house with a certificate of occupancy issued to that effect. There are presently three families residing in the subject premises. The tenant respondent occupies one of the legal apartments covered by the certificate of occupancy. The illegal apartment occupied by one of the other tenants and not covered by the *1027 certificate of occupancy was in existence prior to the landlord purchasing the said premises. The owner resides in the City of New York. No application has been made by the landlord to file plans to convert the said two-family house to a legal three-family multiple dwelling. The landlord is unable to obtain a multiple dwelling registration because the building department will only issue a registration number based on the “legal” occupancy of the building, in this case a two-family house. The parties wish the court to decide whether the landlord is precluded from collecting the rent from the tenant who occupies the legal apartment in said two-family house presently occupied by three families because of the provisions of section 325 of the Multiple Dwelling Law. If the question is answered in the negative, then the court is to award a final judgment in the sum of $3,100 in favor of the landlord. If the question is answered in the affirmative then the court is to dismiss the petition without prejudice. The preceding question is answered by this court in the negative.
STATUTORY AND CASE LAW
background:
Tenants who receive heat, hot water, space facilities and other services from the providing landlord, must expect to pay rent. But no matter how fair or logical the above axiom, this court is presently confronted with a perplexing problem not truly contemplated by, nor adequately responded to by existing statutes, administrative regulations or rules of law.
The statutory definition of multiple dwelling includes not only actual existing use of a dwelling occupied by “three or more families living independently of each other” (Multiple Dwelling Law, § 4, subd 7) but also the intended use or design (Multiple Dwelling Law, §4, subd 1).
Section 325 of the Multiple Dwelling Law requires every owner of a multiple dwelling and every agent or other person having control of such a dwelling to file the required statement of ownership, etc., with the appropriate department. It also provides that in any city over one million which, by local law, requires the registration of owners of multiple dwellings and which prescribes penal *1028 ties, remedies and sanctions to be imposed for the violation of such local registration requirements, no rent shall be received by the said owner who fails to comply with such registration requirements until he complies with such requirements.
Section 2900.21 (f) of the Civil Court Rules of the City of New York (22 NYCRR) provides in pertinent part that in every summary proceeding to recover possession of real property pursuant to RPAPL 711, the petitioner must allege either “(1) that the premises are not a multiple dwelling, or, (2) that the premises are a multiple dwelling and pursuant to the Administrative Code, article 41, there is a currently effective registration statement on file”.
The above allegations are deemed to be required under section 325 of the Multiple Dwelling Law and subdivision b of section D26-41.21 of the Administrative Code of the City of New York which provides in pertinent part that an owner who fails to file such a statement of registration “shall be denied the right to recover possession of the premises for non-payment of rent during the period of noncompliance, and shall, in the discretion of the court, suffer a stay of proceedings to recover rents, during such period.” (Emphasis added.)
In 1974, the Appellate Term, Second Department, in the case of Corbin v Harris (92 Misc 2d 480), held that failure of the landlord to register the premises as a multiple dwelling precluded the maintenance of an action for nonpayment of rent (Multiple Dwelling Law, § 325, subd 2) and that the labeling of the rent action as one for use and occupancy would not evade the statutory provision. The premises were a legal two-family frame dwelling in Brooklyn, occupied by three families contrary to the certificate of occupancy. The tenant lived in the “illegal apartment” and not in any of the two other apartments legally covered under the existing certificate of occupancy. A violation from the Department of Buildings had been issued to the defendants for converting the premises into an illegal three-family dwelling which directed the landlords to “ ‘restore the premises to lawful occupancy’ ” (p 481).
And, in an analogous situation, a petitioner owner of commercial lofts leased to artists as living-work quarters, *1029 was not relieved of the penalties imposed for failing to register the buildings as multiple dwellings and obtaining proper residential certificates of occupancy including the denial of the right to collect rent or recover possession of the premises for nonpayment of rent (Multiple Dwelling Law, §§ 302, 325, subd 2; Administrative Code, § D2641.21, subd b), since the harsh penalties were necessary in order to ensure compliance and discourage landlords who would ignore building restrictions from offering illegal apartments to unsuspecting tenants. (Lipkis v Pikus, 96 Misc 2d 581, affd 99 Misc 2d 518, affd 72 AD2d 697, app dsmd 51 NY2d 874.) And in the case of Mandel v Pitkowsky (102 Misc 2d 478, affd 76 AD2d 807), the court held that since the commercial dwelling had been continuously occupied since 1968 for residential purposes by at least three loft tenants living independently of each other, such building constituted a “de facto” multiple dwelling (Multiple Dwelling Law, § 4, subd 7) and, therefore, the failure of the petitioner in a holdover summary proceeding to allege the information required by the relevant Civil Court rule with respect to the filing of a registration statement (22 NYCRR 2900.21 [f]) mandated dismissal of the petition on jurisdictional grounds.
CONTENTION AND ARGUMENT:
Is this court, then, on the basis of the above precedents, obliged to dismiss the instant petition on jurisdictional and procedural grounds, knowing full well that in the final analysis, the end result can only be regarded as blatantly unfair and grossly inequitable to the petitioners by permitting the respondent, who occupies a legal apartment and receives full services, to unjustly enrich himself? The court is aware that the application of such a precedent to the facts at hand might pose catastrophic consequences not only for these petitioners but for all owners of private homes in Queens County and elsewhere in the City of New York. Is this court then to overlook the consequences on the basis of being placed in a legal straightjacket and reluctantly state that though the results might shock the conscience of this court, nevertheless, it is justly a matter for the 'Legislature to correct?
*1030 Justice Hirsch, in Corbin v Harris (92 Misc 2d 480, supra), in the interest of justice based upon equitable principles of unjust enrichment, ordered plaintiff tenant, who had been living rent free in an “illegal” basement apartment in a two-family house for six and one-half years, because defendant landlords had been precluded from evicting her or collecting any rent as the result of their failure to register the premises as a multiple dwelling, to vacate the premises so that defendants could convert the premises back into a two-family dwelling as required and directed by the Department of Buildings. The defendants had been unable to obtain a multiple dwelling registration which is only issued on the basis of the “legal” occupancy of a building. Justice Hirsch held that the defendants’ initial fault in offering and renting a third apartment in a two-family house does not preclude them from seeking a just and equitable remedy. He further ruled that an equity court has the power to eradicate a deplorable consequence brought about by strict adherence to statutory technicalities; that allowing the plaintiff to continue to occupy the apartment rent free, because of the “illegal” status of the premises would contravent the purpose of the law of eliminating illegal apartments and would eventuate an apparent injustice. (See Harris v Corbin, 79 Misc 2d 971.)
And, in the case of Stanley Assoc. v Marrero (87 Misc 2d 1011), which involved a summary proceeding to recover rent from a tenant who lived on the second floor which was covered by a certificate of occupancy, but because there was no certificate of occupancy for the first floor apartment, the said tenant had interposed as a defense the landlord’s noncompliance with the provisions in section D26-41.01 and subdivision b of section D26-41.21 of the Administrative Code of the City of New York requiring the filing of a registration statement for every multiple dwelling and providing that, in the discretion of the court, a landlord who fails to file such a statement shall suffer a stay of proceedings to recover rents. Judge Martha Zelman, in the court’s discretion, denied the motion to dismiss. The court found that the rent-withholding sanction was not available to a tenant who was merely using the violation to unjustly enrich himself. The court stated (p 1013): *1031 “A statute prohibiting recovery of rent for and disposition of a tenant from a multiple dwelling by a landlord who has failed to obtain a certificate of occupancy is ‘highly penal * * * must be strictly construed, and therefore, may not be extended so as to grant to the tenant any right not expressly provided for.’ (Multiple Dwelling Law, § 302, as stated in Wokal v Sequin, 167 Misc 463, 465.)”
The court further stated (p 1013): “Purpose of the Legislature in promulgating Multiple Dwelling Law is to alleviate health, safety, and construction hazards encountered by residents of multiple dwellings. (See Multiple Dwelling Law, § 2; Noyes v Wulson, 181 Misc 481; People v Fogel, 197 Misc 43.) * * * Tenant failed to prove in any way landlord had not complied with the underlying purpose of the statute.”
And in 1982, the Appellate Division, First Department, in the case of Corris v 129 Front Co. (85 AD2d 176) held that where a landlord had made a good-faith effort to try to furnish heat, hot water, elevator service and electrical services to tenants’ converted loft premises in response to mandatory injunction, landlord’s injunctive obligation to furnish such services would be conditioned upon current payment of rent by all tenants. This relief was granted by the court majority, with Justice Sandler dissenting in part, in spite of the fact that this constituted a residential occupancy without appropriate certificate of occupancy and multiple dwelling registration. The court stated (p 179) “In that connection, a re-examination of the principles set forth in Lipkis v Pikus (supra) and Mandel v Pitkowsky (102 Misc 2d 478, affd 76 AD2d 807), so as to permit such a more flexible approach, may be appropriate ” (Emphasis added; see, also, McCabe v Advent Props., 89 AD2d 548.)
It thus appears that the courts are applying equitable and other remedies to prevent apparent injustice and unfairness in those factual situations presented in the above-stated precedents ánd the instant case before this court. The law at times can be uncompromising and embarrassing in its result and inconsistent with our concept of fair play but fortunately, the rigid confines of statutory law can and should be, when the facts permit it, tempered with the more pliable remedies of equity.
*1032 analysis:
It is this court’s opinion that the facts in the instant case demand a flexible approach and fair application of petitioner’s proceeding for rents due. Unlike Corbin v Harris (supra), Lipkis v Pikus (supra), Mandel v Pitkowsky (supra) and Corris v 129 Front Co. (supra), the premises herein are designated a two-family house with a duly issued certificate of occupancy and the tenant resides in a “legal” apartment. No violation has been placed on the premises as yet by the Department of Buildings. The petitioner landlord did not convert the premises into a multiple dwelling but purchased the premises after the fact, a situation which occurs often. Many of these “conversions” cannot be legalized due to zoning restrictions in Queens County and elsewhere, or the structure is not amenable to same or economically, the costs of filing plans and converting are unfeasible. No hazardous, dangerous or unsafe conditions of occupancy are evident here or alleged, and thus there is no demonstrable prejudice to the tenant herein. One- and two-family houses referred to as private dwellings (Multiple Dwelling Law, § 4, subd 6) in Queens County especially constitute an important and significant segment of the housing stock. It is estimated that in 1981, there were 79,624 two-family houses and 201,761 one-family houses in Queens County compared to 19,708 multiple dwellings. Many of these homes are individually owned and owner occupied. Their contribution to the tax base of the city is all important. The rents collected are primarily used for services such as heat, hot water, repairs and payment of taxes and mortgage. Unlike a large multiple dwelling with many units, the preclusion of any rents to the landlord would pose serious if not catastrophic consequences. In this sort of situation, tenant and landlord alike would suffer.
The purpose of the registration requirement pursuant to section 325 of the Multiple Dwelling Law is to enable tenants and government authorities to readily contact owners or persons responsible for operation of multiple dwellings. (Lazarus v Liebowitz, 85 Misc 2d 822.) This is due to the corporate structure of ownership of many of the *1033 multiple dwellings where owners do not reside in said premises. Where the owner of a one- or two-family house resides in the City of New York, he is not obligated by law to file a registration statement unlike a multiple dwelling. (Administrative Code, § D26-41.01, subd b, par [3].)
This is due to the fact that tenants of one- and two-family houses can readily contact their owners, many of whom occupy the said premises and in many cases tenants themselves maintain and operate the premises. It is therefore arguable that the purposes of the registration statement pursuant to section 325 of the Multiple Dwelling Law is not applicable in a case where the premises are covered by a certificate of occupancy designating a two-family house occupancy but with an illegal accommodation. In obiter dictum fashion, the placing of a notice of violation by the department involving an illegal apartment such as in the Harris v Corbin case (supra), should preclude the landlord from collecting any rents, until either the illegal occupancy is removed and status quo restored or plans are filed, and the certificate of occupancy amended to reflect the additional occupancy. But the penalty or sanction should fit the crime and imposing the same sanction on the “legal apartment” would be inequitable and grossly injurious when you consider that the landlords are unable to obtain a multiple dwelling registration since the building department will only issue said registration number based on the “legal” occupancy of the building — in this case a two-family building.
POWERS AND REMEDIES OF THE HOUSING PART:
Subdivision (a) of section 110 of the CCA referring to the Housing Part, states: “A part of the court shall be devoted to actions and proceedings involving the enforcement of state and local laws for the establishment and maintenance of housing standards, including, but not limited to, the multiple dwelling law and the housing maintenance code, building code and health code of the administrative code of the city of New York, as follows * * * (4) Proceedings for the issuance of injunctions and restraining orders or other orders for the enforcement of housing standards *1034 under such laws. (5) Actions and * * * all summary proceedings to recover possession of residential premises to remove tenants therefrom and to render judgment for rent due”.
Subdivision (c) of section 110 of the CCA states in part: “Regardless of the relief originally sought by a party the court may recommend or employ any remedy, program, procedure or sanction authorized by law for the enforcement of housing standards, if it believes they will be more effective to accomplish compliance or to protect and promote the public interest”.
Section 212 of the CCA states: “In the exercise of its jurisdiction the court shall have all of the powers that the supreme court would have in like actions and proceedings.” The comparable powers of the Supreme Court are exercisable by the Civil Court (Housing Part) only in those cases over which the said court can exercise jurisdiction in the first instance. (See Kwoczka v Dry Dock Sav. Bank, 52 Misc 2d 67.)
conclusion:
Since this court may issue injunctions for the enforcement of housing standards and employ any remedy, etc., regardless of the relief originally sought by a party and in the exercise of that jurisdiction, having all of the powers that the Supreme Court would have in like actions and proceedings, this court, accordingly, orders and enjoins the petitioner landlords to continue to supply the tenant respondents with all essential services as prescribed by law and this order shall be conditioned on the tenants continuing to pay the legal rent.
Section 3 (subd 4, par a) of the Multiple Dwelling Law provides that in the enforcement and administration of this chapter in a city of 400,000 or more persons, the penalties, sanctions and remedies enacted by local law may be applied, notwithstanding their inconsistency with this chapter or the provisions of this chapter.
Subdivision b of section D26-41.21 of the Administrative Code provides in pertinent part that the court shall have" discretion to suffer a stay of proceedings to recover rents during the period of noncompliance. Accordingly, this *1035 court, in its discretion, holds that a landlord is not precluded from collecting rent from a tenant who occupies a legal apartment in a two-family house presently occupied by three families because of the provisions of section 325 of the Multiple Dwelling Law and as to the arrears in rent, awards a final judgment in favor of the landlord in the sum of $3,100 representing all rent through January 31, 1983, with costs, and with a 10-day stay of the issuance of the warrant.