OPINION OF THE COURT
Bruce J. Gould, J.
Respondents, on a month-to-month occupancy, move to dismiss this summary nonpayment proceeding pursuant to CPLR *482 3211 (a) (2) and (7). Respondents acknowledge that there is a valid certificate of occupancy for this two-family house, but contend that the occupancy is by four households requiring dismissal of the proceeding. Petitioner concedes occupancy by respondents on the basement and parlor floors, a caretaker and renter on the second floor who share a bathroom but have no kitchen facilities, and another tenant on the third floor. Petitioner maintains that rent may be collected.
The issue before this court is whether failure to allege filing of a multiple dwelling registration and lack of a multiple dwelling certificate of occupancy mandates dismissal at this stage of the proceeding.
The court believes that dismissal is not required (Rosgro Realty Co. v Braynen, 70 Misc 2d 808 [App Term, 1st Dept]).
A petitioner landlord of a multiple dwelling in a summary nonpayment proceeding must allege and prove specified multiple dwelling registration information: "In any action to recover possession under section seven hundred eleven of the real property actions and proceedings law, the owner shall set forth his or her registration number issued by the department, and shall allege that he or she has filed a statement of registration” (Housing Maintenance Code [HMC; Administrative Code of City of NY] § 27-2107 [b]).
The petition’s specific language allegation is embodied in 22 NYCRR 208.42. This provision is taken from the Rules and Regulations of the Housing and Development Administration, Department of Rent and Housing Maintenance, effective September 8, 1969, which was issued to implement the provisions of Multiple Dwelling Law § 325 and title D of chapter 26 of the former Administrative Code of the City of New York, pursuant to the agency’s power "to promulgate such regulations as it may consider necessary or convenient to interpret or carry out any of the provisions of this code.” (HMC § 27-2090.)
HMC § 27-2107 (b) further provides that: "An owner who is required to file a statement of registration under this article and who fails to file as required shall be denied the right to recover possession of the premises for nonpayment of rent during the period of noncompliance, and shall, in the discretion of the court, suffer a stay of proceedings to recover rents, during such period.” (Emphasis added.)
The Revisors’ Notes to the Proposed New York City Housing Maintenance Code (Legislative Drafting Research Fund of *483 Columbia Univ, Jan. 31, 1967, at 70), which accompanied the introduction of proposed Local Law No. 339, noted: "In the case of a multiple dwelling, the obligation of an owner to register with the department dates back to the tenement house law and was continued in MDL § 325 and MDC § D263.1.”
As to the proposed provision[1] for failure to register (former Administrative Code § D26-41.21) the Revisors’ Notes read (at 71): "Subsection (b) denies the right to sue for recovery of the premises for non-payment of rent to any owner who fails to register, for as long as his non-compliance continues. In addition, it allows the court, in its discretion, to withhold the rent, or to abate the rent during the period of non-compliance. * * * This provision is analogous to the provision of the multiple dwelling law with respect to the consequences of failing to obtain a certificate of occupancy.” (Emphasis added.)
Earlier, the January 20, 1967 Revisor’s Notes to the first draft concluded the above paragraph with the additional cautionary two sentences: "To include this provision in local law, special state enabling legislation is probably necessary. It is included in the [draft] code on the assumption that such enabling legislation will be granted, or that the entire code will be passed by the state legislature.”
The Housing Maintenance Code was approved by the Mayor on July 14, 1967. The next year that expressed concern was met when the City secured State enactment of chapter 864 of the Laws of 1968, which added Multiple Dwelling Law § 325 (2): "In any city of over one million which, by local law, requires the registration of owners of multiple dwellings and which prescribes penalties, remedies, and sanctions to be imposed for the violation of such local registration requirements, no rent shall be recovered by the owner of a multiple dwelling who fails to comply with such registration requirements until he complies with such requirements. If a resident of an unregistered dwelling voluntarily pays rent or an installment of rent when he had a right to withhold the same under this subdivision, he shall not thereafter have any claim or cause of action to recover back the rent or installment of *484 rent so paid. A voluntary payment within the meaning of this subdivision means payment other than one made pursuant to judgment in an action or special proceeding.”
The recent decision of the Appellate Term, Second Department, in Carcione v Rizzo (154 Misc 2d 13, 14 [1992]) held that Multiple Dwelling Law § 325 (2): "merely prevents a resident from recovering voluntary rent payments because the owner of the multiple dwelling failed to comply with the registration requirements of the Multiple Dwelling Law.”
This pithily describes the thrust of Multiple Dwelling Law § 325 (2), that it was enacted to assure that the failure to register could be treated similarly to the "consequences of failing to obtain a certificate of occupancy.” (Revisor’s Notes, op. cit., at 71.) It is no bar to the court choosing whether or not to exercise its discretion to suffer a stay of proceedings to recover rents, during a period of nonregistration (HMC § 27-2107 [b]).
The court’s discretionary powers under HMC § 27-2107 (b) generally have been ignored, with Multiple Dwelling Law § 325 (2) viewed as a bar to a nonpossessory rent judgment during nonregistration. The court concludes, on a close reading of the statute, that that is not the case.
Multiple Dwelling Law § 302 (1) (b) similarly has been found to prevent recovery in the Housing Court in the absence of a certificate of occupancy providing for the building’s actual usage. (But see, Stanley Assocs. v Marrero, 87 Misc 2d 1011 [Civ Ct, Queens County].) That statute reads: "No rent shall be recovered by the owner of such premises [a multiple dwelling occupied without a certificate of occupancy] for said period, and no action or special proceeding shall be maintained therefor, or for possession of said premises for nonpayment of rent.”
As the history of Multiple Dwelling Law § 325 (2) reveals, it assured discretionary power to the court to determine whether to allow recovery of rents during noncompliance.
As to the City’s legislative powers to choose other housing compliance techniques and approaches, the State unshackled its grip: "In the enforcement and administration of this chapter [Multiple Dwelling Law] * * * the penalties, sanctions and remedies enacted by local law may be applied, notwithstanding their inconsistency with this chapter, or the provisions of this chapter.” (Multiple Dwelling Law § 3 [4] [a].)
In the instant proceeding, the certificate of occupancy pro *485 vides for one family to occupy the basement, first and second stories, with the third floor to be similarly occupied by one family. Petitioner does not dispute his conference admission that in addition to the occupancy by two families, the second floor is occupied in separate quarters without kitchen facilities, with a common bathroom by a caretaker and a single person.
This petitioner cannot simply obtain a MDR number for a building occupied as a multiple dwelling (Multiple Dwelling Law § 4 [7]). In response to the court’s request for an inspection, code enforcement placed a violation to discontinue the occupancy of the second story front and rear even though their report finding reads "Bldg, possibly occupied as a multiple dwelling” with the inspector noting his failure to gain access to the second and third floors.
The court recognizes the inequality in depriving a landlord of an agreed upon $830 a month rent, when the occupant is enjoying the benefit of being housed in a five room basement and parlor accommodation whose occupancy is legal under the existing certificate of occupancy (Corbin v Harris, 92 Misc 2d 480 [Sup Ct, Kings County]). At the same time, there is inherent in such building’s increased household occupancy, additional fire and safety risks, for which the law mandates that multiple dwellings provide increased protection, e.g., second means of egress, larger windows, fire proofed entrance doors, enclosed boiler room, additional lighting in front and back of the house.
The issue of additional occupancy of legal one- and two-family buildings is a constant happening in the Brooklyn Housing Court, evidence of the City’s reluctance to crack down on this practice which for decades has provided additional, albeit illegal, housing in a tight housing market,[2] as well as a silent recognition of the likely need by many owners for additional rental income to maintain these structures.
Where private dwellings are occupied by three or more families and landlords find themselves unable to secure rent and/or possession in summary proceedings, they have utilized Supreme Court ejection proceedings at considerably greater *486 expense to remove the tenants (Jordan Mfg. Corp. v Zimmerman, 169 AD2d 815 [2d Dept]).
Some lower courts in summary nonpayment proceedings have allowed final judgments where the subject apartment in those circumstances is not the "illegal unit” (Chan v Kormendi, 118 Misc 2d 1026 [Civ Ct, Queens County 1984]; Santiago v Perez, NYLJ, July 16, 1992, at 25, col 3 [Civ Ct, Queens County]). Others have dismissed the proceedings. Most recently a court recognizing the over-all problem of the illegal one’s and two’s in a summary holdover proceeding pointedly left it to the Legislature to remedy (Manabhal v Talavera, NYLJ, Aug. 18, 1993, at 24, col 3 [Civ Ct, Kings County]).
Those decisions which bar the illegal one’s and two’s from any summary proceeding recovery, leave the building’s illegal occupancy as it is, subject to forces outside the court’s direction and control. What happens to the continued nonconforming building with its inherent heightened safety problems for all the households in occupancy is simply left to the parties.
Where the court merely allows continued occupancy upon payment, the issue of the legal standards, mostly concerned with fire protection that the law imposes upon multiple dwellings, are sidestepped.
Recognizing the discretionary powers of the court not to stay the recovery rents in the proceeding (HMC § 27-2107 [b]), and the power of the court, regardless of the relief originally sought, to employ any remedy, program procedure or sanction to more effectively accomplish compliance or to protect and promote the public interest (CCA 110 [c]), the court denies the motion to dismiss.
The petitioner is ordered to take those steps necessary to legalize the building’s occupancy. The petitioner is to file with the court, after service upon the respondents, an affidavit by someone with the requisite knowledge as to whether the building can be legalized, and the steps being taken to bring the building into conformity with the law.
Were it not to the fact that respondents have pleaded conditions warranting a monthly payment at a lesser sum than the agreed upon rental (Callahan v Reid, 119 Misc 2d 190 [Civ Ct, Kings County 1983]), the court would consider ordering the amount heretofore paid as rent deposited into *487 court. As the rental amount is subject to warranty claims, and as at this stage of the proceeding there may be other issues as to petitioner’s entitlement to rent, this proceeding is set down for a trial, to be arranged by counsel and the Court’s Clerk, for a mutually satisfactory date.

. The bill provision then read: "An owner who is required to file a statement of registration under this article and who fails to file as required shall be denied the right to recover possession of the premises for nonpayment of rent during the period of non-compliance, and shall in addition, suffer the abatement of rents, or alternatively, in the discretion of the court, a stay or [sic] proceedings to recover rents, during such period.”

. Recently, in an effort to block the creation of illegal two’s, three’s and four’s, the State enacted chapter 92 of the Laws of 1992, amending the Administrative Code of the City of New York, to prevent public utilities from installing more electrical meters in a one- to four-family house than the number of authorized units.