OPINION OF THE COURT
Marc Finkelstein, J.
The issue in this matter is whether a landlord is precluded *606 from maintaining a nonpayment proceeding against a tenant who occupies a legal apartment in a two-family house occupied by three families at the time the action was commenced.
The petition herein claims one month unpaid garage rent of $100 and two subsequent months of unpaid apartment rent (at $950 per month) and garage rent (at $100 per month). The petition alleges that the apartment is not subject to rent regulation "by reason of being located in a two (2) family dwelling. ” Further, and most important to the issue at hand, the petition states that the premises are not a multiple dwelling and therefore there is no multiple dwelling registration.
Respondent, pro se, interposed an oral answer stating only that he was "out of work.” At the first scheduled trial date, petitioners submitted a pretrial memorandum of law. The statement of facts portion of said memorandum indicates quite candidly that this is an "illegal three” situation in which the premises are a legal two-family residence with garage, then being occupied by three families. However, it is further stated (and subsequently uncontested) that respondent occupies one of the otherwise "legal” apartments. Petitioners argue that even though they admittedly failed to register the apartment in accordance with Multiple Dwelling Law § 325, because respondent resides in one of the two legal apartments covered by the certificate of occupancy, the court has jurisdiction over this proceeding and they are entitled to a nonpayment final judgment.
As the above facts are not in dispute, a decision was necessitated prior to trial on the issue at hand which was so forthrightly presented by petitioners before it was even formally raised by respondent. As a result, the court rendered an interim order indicating that petitioners’ memorandum of law would be treated as a motion for partial summary judgment on the issue of the court’s jurisdiction in this "illegal three” nonpayment situation. Respondent indicated that he was receiving advice from an unnamed legal services office. Thus, he was afforded 30 days to respond in writing to petitioners’ argument. Although respondent was unable to obtain an actual appearance by legal services on his behalf, he subsequently submitted a memorandum of law which argues that no summary proceeding can be maintained by the owner of a multiple dwelling who fails to register the dwelling as such.
In summary, petitioners argue: "Sections 302 and 325 of the Multiple Dwelling Law do not preclude petitioners from ob- *607 taming [a judgment of both rent and] possession against a tenant occupying a legal apartment in a two family house occupied by three [separate, independent] families.”
Respondent’s reply is that: "These premises are [concededly] a de facto multiple dwelling and it matters not which is the legal’ or which is the Illegal’ apartment. The rationale of the legislature in barring summary proceedings for illegal multiple dwellings bears no relationship to a legal as opposed to an illegally added dwelling unit. The legislation seeks to obtain compliance with building codes and other statutes by sanctioning building owners who create illegal dwellings.”
As applicable to the facts of this case, 22 NYCRR 208.42 (g) provides that pursuant to the requirements of Multiple Dwelling Law § 325 and section D26-41.21 (b) (now § 27-2107 [b]) of the Administrative Code of the City of New York, every nonpayment petition shall allege either that the premises are not a multiple dwelling, or that the premises are a multiple dwelling and there is a currently effective registration statement on file with the office of code enforcement in which the owner has designated a managing agent, and shall also allege the multiple dwelling registration number, the registered managing agent’s name, and either the residence or business address of the managing agent. Multiple Dwelling Law § 4 (7) defines a multiple dwelling as a dwelling occupied as the residence of three or more families living independently of each other. Under Multiple Dwelling Law § 325 (1), every multiple dwelling must be registered as such and have a multiple dwelling registration on file with the Department of Housing Preservation and Development (HPD). If the owner does not comply with the registration requirement, Multiple Dwelling Law § 325 (2) provides that "no rent shall be recovered by the owner of a multiple dwelling who fails to comply with such registration requirements until he complies with such requirements.”
In applying the above rules and requirements, there appear to be four permutations of so-called "illegal three” cases which can be presented to the Housing Court: (1) nonpayment actions against the tenant of the "illegal” apartment in the subject premises, not covered by any existing certificate of occupancy; (2) (as is the case herein) nonpayment actions against the tenant of a "legal” apartment covered by and in conformity with a duly issued certificate of occupancy for the premises, but where there is also an illegal apartment in some other portion of the premises; (3) holdover actions against the *608 tenant of the illegal apartment in the subject premises; (4) holdover actions against the tenant of a legal apartment, but where there is also an illegal apartment elsewhere in the premises.
There are a number of reported decisions in this area. After extensive research, the court has found that many of the decisions are conflicting in regard to the four permutations. While there are appellate decisions in the nonpayment area (cited below), the court is not aware of any such decisions which specifically distinguish between a tenant residing in a "legal” apartment in premises also containing an "illegal” apartment — the permutation being addressed herein — and a tenant residing in an "illegal” apartment.
In reconciling the conflicting decisions, the court is of the opinion that in the nonpayment area the language of Multiple Dwelling Law § 325 (2) is clear and compliance with Multiple Dwelling Law § 325 is imperative. The applicable rule of law is that no rent may be recovered by the owner of a multiple dwelling who fails to register the dwelling and the nonpayment petition must be dismissed. For the reasons discussed below and while recognizing that there are legitimate concerns and interests raised in opposition, nevertheless this court feels constrained to apply the foregoing rule of law even if, as here, the respondent is one of the so-called "legal” tenants of the building. (See, Morgan v Toporovsky, NYLJ, Feb. 3, 1994, at 27, col 4 [App Term, 2d Dept] ["Pursuant to paragraph two of section 325 of the Multiple Dwelling Law, no rent may be recovered by the owner of a multiple dwelling who fails to register the dwelling”]; Chandra v Pluck, NYLJ, Sept. 30, 1992, at 27, col 2 [App Term, 2d Dept] ["An owner’s failure to register a premises as a multiple dwelling precludes him from maintaining a summary proceeding predicated upon nonpayment of rent”]; Matter of Blackgold Realty Corp. v Milne, 69 NY2d 719 [1987]; Manabhal v Talavera, NYLJ, Aug. 18, 1993, at 24, col 3 [Civ Ct, Kings County].)
The background of the issue involved in this matter was well put by another Brooklyn Housing Part: "The issue of additional occupancy of legal one- and two-family buildings is a constant happening in the Brooklyn Housing Court, evidence of the City’s reluctance to crack down on this practice which for decades has provided additional, albeit illegal, housing in a tight housing market, as well as a silent recognition of the likely need by many owners for additional rental income to maintain these structures.” (Hall v Burroughs, 159 *609 Misc 2d 481, 485 [Civ Ct, Kings County 1993].) Despite the frequency with which illegal-three cases arise, the case law is not dispositive. Even though the Multiple Dwelling Law regulates the whole premises that are structural multiple dwellings or de facto multiple dwellings, some case law distinguishes between the tenants within these premises. Certain tenants have been penned "legal” by virtue of the fact that they are covered by the certificate of occupancy, whereas other tenants who reside in areas not covered, like the basement or attic, are dubbed "illegal.”
The case law is rather uniform in denying the landlord collection of rent from the tenant of the illegal apartment. (See, e.g., Hornfield v Gaare, 130 AD2d 398; Santiago v Perez, NYLJ, July 16, 1992, at 25, col 3 [Civ Ct, Queens County].) To the contrary, there is no consistent approach to the collection of rent from the "legal” tenant. Nor is there a consistent approach in the context of holdover proceedings, whether the respondent occupies the "illegal” or the "legal” apartment, despite that Multiple Dwelling Law § 325 (and, for that matter, also Multiple Dwelling Law § 302 [1] [b] and Administrative Code § 27-2107 [b]) make no mention of holdover actions.
In Manabhal v Talavera (supra) the court dismissed a holdover proceeding against the tenant who resided in the legal apartment, because the basement was illegally occupied at the commencement of the proceeding. The court held that where an owner illegally, in violation of the building certificate of occupancy, converts a two-family dwelling into a three or more family dwelling, the premises are considered a de facto multiple dwelling requiring registration. The court recognized that several recent cases created exceptions that functioned to swallow up the general rule as to compliance with the Multiple Dwelling Law by permitting recovery of rent from "legal” tenants. However, the court in Manabhal rejected these cases, dismissed the holdover petition, and held that any change in the Multiple Dwelling Law should be facilitated by the Legislature and not the judiciary. This court agrees with the reasoning of Manabhal and applies it to nonpayment actions (which Multiple Dwelling Law §§ 325, 302 [1] [b] and Administrative Code § 27-2107 [b] do specifically mention) against tenants of the legal apartment.
Petitioner relies on Chan v Kormendi (118 Misc 2d 1026), which departed from the literal meaning of Multiple Dwelling Law § 325 and held that the landlord was not precluded from collecting rent from the tenant occupying the legal apartment. *610 The basis for Chan is that the intended functions of the Multiple Dwelling Law, namely to protect the tenant from health and safety hazards and to give notice of the owner’s identity, are satisfied in "legal” apartments. "No hazardous, dangerous or unsafe conditions of occupancy are evident here or alleged, and thus there is no demonstrable prejudice to the tenant herein.” (Supra, at 1032.)
This court looks to the basic reason why Multiple Dwelling Law § 325 was enacted and its effectuation. "This registration requirement reflects the law’s concern for the public welfare, as the Multiple Dwelling Law was enacted upon a legislative finding that conditions menacing public health and safety required registration.” (Thomas v Greenidege, NYLJ, Jan. 21, 1992, at 35, col 2 [Civ Ct, Kings County]; Multiple Dwelling Law § 2.) The purpose of the Multiple Dwelling Law is to assure residential occupants of safe and sound construction of the homes in which they reside. "This purpose is achieved where the tenant’s occupancy is in conformity with and approved under the existing certificate of occupancy and the tenant’s health, safety or welfare is uncompromised by a denizen of an unapproved portion of the building.” (Santiago v Perez, supra; see also, Washington Sq. Professional Bldg, v Leader, 68 Misc 2d 72.) There is inherent in a building’s illegal increased occupancy additional fire and safety risks, for which the law mandates that multiple dwellings provide increased protection, e.g., second means of egress, larger windows, fire proofed entrance doors, enclosed boiler room, and additional lighting in front and back of the house. (Hall v Burroughs, 159 Misc 2d, at 485, supra.)
It seems obvious that if there is illegal occupancy, the heightened risks and fire, health and safety issues are not limited only to the so-called illegal apartment. It is of little consolation to the tenant in the legal apartment living above an illegal apartment that a potential fire hazard exists "only” in the other apartment. A fire does not restrict itself to only the illegal apartment. Moreover, it is not the tenant’s responsibility nor within the expertise of the average legal tenant to detect what is or is not an unsafe condition. Many times these conditions are hidden within the walls that created the illegality.
Additionally, Chan (supra), with reference to Corbin v Harris (92 Misc 2d 480), holds that the tenants of these apartments are unjustly enriched by not being within the court’s jurisdiction in a nonpayment suit. While this court certainly *611 does not condone tenants remaining in apartments for extended periods of time rent free, enforcing compliance with the Multiple Dwelling Law, by denying the landlord the privilege of summary proceeding in these cases, would hardly "shock the conscience of [the] court” (Chan v Kormendi, 118 Misc 2d, at 1029, supra).[1]
The risk that a "legal” tenant might take financial advantage of the effect of Multiple Dwelling Law § 325 is not enough to justify the courts closing their eyes to the purpose and protections afforded by Multiple Dwelling Law § 325 and the other aforementioned statutes. Moreover, if elapsed period of time of nonpayment is an issue, as it was in Corbin (supra), the landlord has other avenues of redress: possibly via a holdover action in Housing Court or definitely via an ejectment action in Supreme Court.
Petitioner also cites Santiago v Perez (NYLJ, July 16, 1992, at 25, col 3, supra) which raises similar arguments as Chan (supra) for departing from the meaning of Multiple Dwelling Law § 325. Santiago focuses on the fact that one of the purposes of Multiple Dwelling Law § 325 is to give tenants notice of ownership of the premises. Santiago finds that this statute is especially protective of tenants who reside in one of many buildings owned by a corporation who may have no other way of learning the identity of the owner of their building. Santiago points out that in a one- or two-family home, tenants will know their landlords as they also reside in the premises. However, this court cannot single out and penalize tenants of one- or two-family homes by subjecting them to potentially hazardous conditions simply because they are cognizant of their landlord’s identity.
Petitioner also cites Hall v Burroughs (supra) which also denied respondent’s motion to dismiss on the basis of petitioner’s failure to register the premises as a multiple dwelling. However, the reasoning is Hall is on an entirely different track than the exceptions to the general rule carved out in Chan (supra). The court recognizes that illegal-three premises are "continued nonconforming building[s] with * * * inherent heightened safety problems for all the households in occupancy.” (159 Misc 2d, at 486, supra.) Thus, the court’s allowance of the maintenance of nonpayment suits despite the *612 failure to register is conditional and does not permit the ignoring of registration requirements. Indeed, in that case, respondents pleaded conditions warranting a monthly payment at a lesser sum than the agreed upon rental. As a result, Hall held that only after taking steps to legalize the building in conformity with the law could the landlord collect rent payments from the legal tenant. (Supra, at 485-486.) In fact, rather than allowing the illegality to continue, the landlord was ordered to take those steps necessary to legalize the building’s occupancy.[2]
Moreover, it seems that if the building at issue were a traditional multiple dwelling rather than a converted one- or two-family premises, courts would mandate strict compliance with Multiple Dwelling Law § 325 in order to maintain summary proceedings.
"The controlling law regarding proper registration as a condition precedent to bringing a nonpayment or holdover proceeding in Housing Court is that when the landlord fails to meet the registration requirements of section 325, it may not maintain a special proceeding to recover possession of real property. It is clear that New York State law requires that once it is established that the building is a multiple dwelling, the provisions of section 325 must be complied with and is a necessary element of the cause of action by a landlord for recovery of possession by special proceedings under article 7 of the RPAPL.” (Vidod Realty Co. v Calvin, 147 Misc 2d 488, 491 [1989]; Thomas v Greenidege, NYLJ, Jan. 21, 1992, at 35, col 2, supra; Normal Realty Co. v Rios, 109 Misc 2d 555 [1981].)
This court recognizes the financial need of individual homeowners and the court acknowledges that many of these owners do make good-faith efforts to provide heat, hot water, and electrical services. However the right to pursue nonpayment suits in summary proceedings is a privilege that is granted only to those who comply with applicable statutes.[3] Moreover, *613 these owners also have the right to pursue a change in the law through the legislative process.
For the foregoing reasons, the petition herein is dismissed, without prejudice.

. In addition, the court notes that Corbin (supra) involved a tenant who did not pay rent for 6V2 years, while the tenant here did not pay apartment rent for only two months at the time the suit was commenced.

. Moreover, the court examined the Hall file and found that the matter did not proceed beyond the court’s initial decision. Thus, the Hall case (supra) is improperly cited by petitioner as one allowing nonpayment proceedings where the subject apartment was not the "illegal unit.” While the Hall petition was not dismissed, it appears the building’s occupancy was not legalized and the landlord was never awarded any rent by the court.

. During the course of this proceeding, it was indicated that the "illegal” tenant had vacated. This alleged change in circumstances does not effect the court’s holding because the premises were illegally occupied at the commencement of the proceeding. (Manabhal v Talavera, supra.) However, *613 if the premises are presently legal, then petitioner has the options of commencing another nonpayment action, or a holdover proceeding or ejectment action.