OPINION OF THE COURT
Gary F. Marton, J.
Respondents have moved to vacate two stipulations of settle *74 ment, the judgment, and the warrant herein. They seek as well to reinstate the landlord-tenant relationship and to dismiss this proceeding. Respondents seek this relief on the ground, recently asserted, that the premises is an unregistered multiple dwelling. For the reasons set out below, the motion is denied.
Background and Procedural Posture
Petitioner owns the premises, a two-family dwelling with a basement, and lives in the second floor apartment. Respondents rented the first floor apartment on or about December 1, 1998. Four months later they stopped paying the $850 monthly rent. Petitioner, acting pro se, began this nonpayment proceeding in July 1999 to recover possession of the premises. Respondents, also acting pro se, interposed an answer raising two defenses, to wit, that there were conditions in the apartment that needed to be repaired and that the rent had been partially paid. By a stipulation “so ordered” on August 10, 1999, respondents agreed to pay $2,900 in arrears and petitioner agreed to repair a valve on the bathtub and to ensure that the refrigerator stayed cold.
Respondents defaulted on the agreement and petitioner moved to enter judgment. On the November 29, 1999 return date, the motion was granted on default and a judgment for $2,900 was entered. A warrant issued on June 30, 2000.
By order to show cause sought on July 21, 2000 respondents moved to vacate the judgment and to stay execution of the warrant. In the supporting affidavit, respondents asserted that they had paid $1,200 on July 1, 2000 and that they would pay all arrears by August 15, 2000. By a stipulation “so ordered” on the August 3, 2000 return date, respondents agreed to discharge all rent arrears, then totaling $4,950, pursuant to a schedule ending on September 8, 2000. Respondents also agreed to vacate the premises if they could not pay by the deadline.
Respondents defaulted on this agreement. By order to show cause sought on August 29, 2000 respondents moved to vacate the judgment and to stay execution of the warrant. They sought this relief on the ground that they would pay $2,000 to petitioner immediately and that they would pay another $550 by September 1, 2000. By ex parte order obtained by petitioner on August 30, 2000, the order to show cause was vacated. In the supporting affidavit, petitioner averred that she had gone to the drawer’s bank to cash the $2,000 check and was told that the check would not clear because there was no money in the account.
*75 By order to show cause sought on September 7, 2000 and returnable on September 15, 2000, respondents moved to vacate the judgment, to stay execution of the warrant, and to dismiss this proceeding. On the return date, both petitioner and respondents appeared for the first time by counsel. Respondents asserted that the basement was being used as an apartment, that respondents’ apartment was located not in a two-family dwelling but in a three-unit unregistered multiple dwelling, and, therefore, that pursuant to the Multiple Dwelling Law, the instant nonpayment proceeding had to be dismissed. Petitioner denied that the basement was used as an apartment.
The Court adjourned the matter to September 28, 2000 so that a Housing Court Assistant might inspect the premises. She reported (tape k6609 counter 2290). that the premises had a basement with a separate entrance, that there was a bathroom with a sink, a shower (but no bath), and a commode, and that there was a kitchen. She noted that she had opened the refrigerator, which was small, that it was empty, and that it had a musty smell that indicated that it had not been used for some time. She also advised the Court that she had not seen any food, that there was not a bed in the basement, but that there was a mattress and a box spring upright against a wall. She also advised the Court that she had seen a number of bags in the basement but that she did not know what they contained.
Petitioner testified that the basement was in the same condition that it had been in since her purchase of the premises 11 years before; that she used the basement only for storage, except that her grandchildren played there on occasion; and that no one lived there. Respondents did not testify.
The Court found that respondents had not demonstrated either that the basement was occupied as a residence or that the premises were occupied as a home or residence of three or more families living independently of each other. The Court held that the premises were not a “multiple dwelling” as defined in Multiple Dwelling Law § 4 (7) and, by a decision and order dated October 10, 2000, the Court denied respondents’ motion. The Court did not reach the issue of whether there were grounds to vacate the stipulations, the judgment, and the warrant.
By order to show cause returnable on November 13, 2000 respondents moved for leave to reargue. Respondents contended that the Court erred in failing to recognize that the definition *76 of “multiple dwelling” is broader than the one set out in Multiple Dwelling Law § 4 (7) alone, and that that provision must be read in conjunction with Multiple Dwelling Law § 4 (1). Respondents asserted that the Court would have granted the relief sought had the Court used the broader definition. Respondents also contended that newly discovered evidence showed that the basement was occupied for residential purposes.[1]
The Court conducted a hearing on two dates, November 13, 2000 (tape k8097 counter 2384) and December 1, 2000 (tape k8255 counter 1802). Petitioner testified that her predecessor-in-title’s children lived in the basement while the predecessor owned the building, that no one had lived in the basement since she (i.e., petitioner) had purchased the property, and that the alleged resident in the basement, one Heather Fortune, was her goddaughter and the best friend of her daughter. Petitioner also testified that Ms. Fortune lived elsewhere, and that she spent time in the basement only when babysitting for petitioner’s grandchildren. Respondent Roma Williams testified that no one had lived in the basement since October 2000 but that Ms. Fortune had lived there before that time.[2] As newly discovered evidence, Ms. Williams offered a copy of a cover from a mailed weekly cable television program guide, the cover showing that it was a guide to programs for the week of October 21-27, 2000. The mailing label bears the mailing address “HEATHER B FORTUNE, APTBSMT, 417 LINCOLN RD, Brooklyn, ny, 11225-4305.” Ms. Williams acknowledged that she had obtained this document by taking the guide from a pile of mail that had been delivered to petitioner at the premises, copying the cover page, and then returning the guide to petitioner’s mail.
Petitioner did not call Ms. Fortune to testify. Respondents did not offer evidence that utilities, such as telephone, gas, and electric, were billed to Ms. Fortune or to anyone else in the basement. Respondents have never contended that their health or safety was jeopardized by conditions in the basement or that the rent for their apartment ought to be abated as a result of the alleged occupancy of the basement.
*77 Analysis and Conclusion
In pertinent part, Multiple Dwelling Law § 4 (7) provides that a multiple dwelling “is a dwelling which is either rented, leased, let or hired out, to be occupied, or is occupied as the residence or home of three or more families living independently of each other.” Multiple Dwelling Law § 4 (1) provides: “Wherever the word or words ‘occupied,5 ‘is occupied,’ ‘used’ or ‘is used’ appear, such word or words shall be construed as if followed by the words ‘or is intended, arranged or designed to be used or occupied.’ ”
In its prior ruling, the Court overlooked Multiple Dwelling Law § 4 (l)’s requirement to construe Multiple Dwelling Law § 4 (7)’s definition of “multiple dwelling” to include dwellings that are not occupied but that are arranged or designed to be occupied. Under this construction and on the record herein, the Court finds that the premises is a de facto multiple dwelling.
Respondents urge that once the Court finds that the premises is an unregistered multiple dwelling, the Court must dismiss this proceeding, either for lack of subject matter jurisdiction or else for petitioner’s failure to comply with the registration and pleading requirements of Multiple Dwelling Law § 325 and 22 NYCRR 208.42 (g). In pertinent part, Multiple Dwelling Law § 325 (2) provides: “In any city of over one million which, by local law, requires the registration of owners of multiple dwellings and which prescribes penalties, remedies, and sanctions to be imposed for the violation of such local registration requirements, no rent shall be recovered by the owner of a multiple dwelling who fails to comply with such registration requirements until he complies with such requirements.” In pertinent part, 22 NYCRR 208.42 (g) provides:
“In every summary proceeding brought to recover possession of real property pursuant to section 711 of the Real Property Actions and Proceedings Law, the petitioner shall allege either:
“(1) that the premises are not a multiple dwelling; or
“(2) that the premises are a multiple dwelling and, pursuant to the Administrative Code, sections 27-2097 et seq., there is a currently effective registration statement on file with the office of code enforcement in which the owner has designated a managing agent, a natural person over 21 years of age, to be in control of and responsible for the maintenance and operation of the dwelling.”
The Legislature enacted the Multiple Dwelling Law to promote the health and safety of residents of multiple dwell *78 ings (see, Multiple Dwelling Law § 2), not to fix the subject matter jurisdiction of this Court. This Court’s jurisdiction is established by article VI, § 15 (b) of the Constitution of the State of New York, article 7 of the Real Property Actions and Proceedings Law, and section 204 of the New York City Civil Court Act. These statutes provide that this Court has subject matter jurisdiction to entertain proceedings to recover real estate. This proceeding is one to recover possession of real estate. This Court has jurisdiction over this proceeding.
The question remains whether to vacate the warrant, the judgment, and the stipulations of settlement, to restore the landlord-tenant relationship, and to allow respondents to assert noncompliance with the Multiple Dwelling Law as a defense now. Very likely, respondents would have prevailed had they chosen to defend on this ground. (See, e.g., Jalinos v Ramkalup, 255 AD2d 293 [2d Dept 1998] [where the court held that the Multiple Dwelling Law’s bar against the collection of rent extended to preclude the owner of an unregistered multiple dwelling from recovering use and occupancy in an ejectment action]; Santos v Aquasvivas, NYLJ, July 10, 1997, at 32, col 5 [App Term, 2d Dept] [where the court vacated a default judgment and dismissed a holdover proceeding that had been brought to evict the tenant of an illegal basement apartment]; Mannino v Fielder, 165 Misc 2d 605 [Civ Ct, Kings County 1995] [where the court dismissed a nonpayment proceeding brought against the tenant of a legal apartment in a two-family dwelling occupied by three families]; but cf., Zane v Kellner, 240 AD2d 208 [1st Dept 1997] [where the court directed the tenant to pay use and occupancy into court until the landlord had obtained a certificate of occupancy]; Christos v Papastefanou, NYLJ, Apr. 5, 2000, at 31, col 4 [Civ Ct, Bronx County] [where the court held in a nonpayment proceeding that once the landlord had brought the premises into compliance with the Multiple Dwelling Law, the landlord might recover rent arrears that had accrued prior thereto].)
But respondents chose not to defend against this proceeding. Instead, they chose to relinquish such defenses as they might have had and to enter into a stipulation of settlement. There is no question that defenses can be compromised, relinquished, and merged into stipulations of settlement. (Birchwood Towers #2 Assocs. v Schwartz, 98 AD2d 699 [2d Dept 1983].) Thereafter, respondents defaulted on the stipulation and defaulted again when petitioner moved for a judgment and a warrant. Seven months later, respondents moved to vacate the judg *79 ment and the warrant, albeit without offering an excuse either for the default or for the seven-month delay. On the return date, respondents relinquished their defenses again and entered into another stipulation of settlement. This stipulation provided specifically, among other things, "Judgment and warrant remain in force,” and “T. agrees to vacate should he be unable to pay for any reason.”
RPAPL 749 (3) provides that issuance of a warrant annuls the relation of landlord and tenant, but the statute also vests the court with the discretion to vacate a warrant for good cause shown. CPLR 5015 provides that the court may vacate a judgment on the grounds of fraud, misrepresentation, misconduct by an adverse party, or newly discovered evidence. CPLR 2104 provides that an agreement between parties is not binding unless it is in writing, is subscribed by the party, and has been reduced to the form of an order. Respondents do not contend that the stipulations here do not meet this standard. In Hallock v State of New York (64 NY2d 224, 230 [1984]), the Court enforced a stipulation of settlement and explained the importance of so doing: “Stipulations of settlement are favored by the courts and not lightly cast aside (see Matter of Galasso, 35 NY2d 319, 321). This is all the more so in the case of ‘open court’ stipulations (Matter of Dolgin Eldert Corp., 31 NY2d 1, 10) within CPLR 2104, where strict enforcement not only serves the interest of efficient dispute resolution but also is essential to the management of court calendars and integrity of the litigation process. Only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident, will a party be relieved from the consequences of a stipulation made during litigation (Matter of Frutiger, 29 NY2d 143, 149-150).”
The decision that this Court must make lies within its discretion. The Court finds that there are no grounds that warrant vacating the judgment or the stipulations herein, and that there is no good cause to vacate the warrant or to stay its execution. The Court finds the health and safety purposes of the governing statutes would not be served by granting the relief sought. The Court finds that granting this relief would allow respondents to continue to enrich themselves unjustly by impoverishing petitioner. Were the Court to grant respondents’ motion, the Court would prevent petitioner from collecting income that she needs to pay real estate taxes, to make mortgage payments, and to provide heat and hot water and other essential services at the premises. It is no answer to say, *80 as respondents have, that upon the dismissal of this proceeding petitioner could bring an action for ejectment and, barring unforeseen glitches, have respondents evicted in another six months or so. That would push petitioner closer, perhaps dangerously closer, to foreclosure or personal bankruptcy. The Court fails to see what health or safety purpose, or what larger societal interest, would be served by so doing.
Moreover, were the Court to vacate the warrant, the judgment, and the stipulations, reinstate the landlord-tenant relationship, and then dismiss this proceeding, the Court might establish a well-nigh irresistible temptation for future respondents with substantial defenses to stipulate to settlements, then to default upon them, and then to delay until the notice of eviction had been served before raising those defenses.
In short, this Court cannot find any reason to exercise its discretion in respondents’ favor.[3] Accordingly, respondents’ motion for leave to reargue is granted, but upon the granting thereof, the motion is denied. The warrant may be executed upon the service by mail of a marshal’s notice.
CCA 110 (c) provides, in pertinent part, that ££[r]egardless of the relief originally sought by a party the court may recommend or employ any remedy, program, procedure or sanction authorized by law for the enforcement of housing standards.” Pursuant thereto, the Court directs petitioner to take forthwith such steps as may be necessary to bring the premises into compliance with the Multiple Dwelling Law.

. To the extent that respondents seek relief on the ground of newly discovered evidence, their motion is for renewal, not for reargument. (CPLR 2221.) In light of the result reached here, this mischaracterization is of no consequence.

. At paragraph 11 of the supporting affirmation of Diane Betancourt, dated October 25, 2000, respondents’ counsel also states that Ms. Fortune resided in the apartment until October 9, 2000.

. Cf., Santiago v Perez (NYLJ, July 16, 1992, at 25, col 3 [Civ Ct, Queens County]) where the court, upon the application of tenants who had vacated the premises after defaulting on a stipulation of settlement made in a nonpayment proceeding, denied their motion to vacate the money judgment entered pursuant to the stipulation even though the tenants showed that the premises had been an unregistered multiple dwelling.