OPINION OF THE COURT
C. Stephen Hackeling, J.
*342 The above-captioned pro se defendant, Raymond Grover, moves this court pursuant to a sworn application dated August 4, 2003, seeking dismissal of the plaintiff North Fork Bank’s summons and complaint pending under index No. 3248-03, dated November 8, 2002, and filed with this court on July 14, 2003.
The Facts
The undisputed relevant facts before the court are as follows:
(a) Defendant was granted a traverse hearing concerning service of an identical summons and complaint pending under index No. 3915-02, which was scheduled for July 1, 2003.
(b) Immediately prior to the traverse hearing, inside the courtroom, but outside the presence of the judge, plaintiff’s counsel handed defendant a copy of the same summons and complaint that was the subject of the traverse hearing.
(c) Thereafter, plaintiff requested dismissal of its complaint filed under index No. 3915-02 when called to conduct the traverse hearing, advising the court that the issue of service was mooted by its just effected personal service. Plaintiff then purchased a new index No. 3248-03.
(d) The defendant protested personal service in the courthouse and the court did indicate to plaintiffs counsel that it did not consider such service appropriate and that the issue would be resolved in the event defendant raised same as affirmative defense.
The Issues Presented
Defendant’s pro se application filed August 4, 2003 requests dismissal of plaintiffs complaint, but fails to state a statutory predicate. The gravamen of the application seems to assert a “Courthouse Sanctuary” immunity from service defense in conjunction with a CPLR 3211 (a) (4) double proceeding prohibition.
The Law
(“Courthouse Sanctuary”)
Despite antagonistic dicta to the contrary, most modern era precedent dealing with the issue of “Courthouse Sanctuary” from service of process has held that New York State residents receive no such immunity protections. (Baumgartner v Baumgartner, 273 App Div 411 [1st Dept 1948]; Department of Hous. *343 Preserv. & Dev. of City of N.Y. v Koenigsberg, 133 Misc 2d 893 [Civ Ct, NY County 1986]; Ford Motor Credit Co. v Bobo, 1 Misc 3d 901 [A], 2003 NY Slip Op 51464[U] [Nassau Dist Ct, Miller, J.].) These cases hold that the courthouse sanctuary is only available to foreign state residents who come into New York’s courts to contest jurisdiction. This doctrine has been slightly expanded to include New York residents who enter the jurisdiction of a New York court of limited territorial jurisdiction to contest jurisdiction. (See Palazzo v Conforti, 50 NYS2d 706 [Civ Ct, NY County 1944]; Singer v Reising, 154 Misc 239 [Mun Ct, Queens County 1935].)
The Baumgartner Appellate Division panel (at 413) also acknowledges a limited “Courthouse Sanctuary” rule for New York residents if such service would “constitute a disturbance directly tending to interrupt the proceedings of the court or to impair the respect due to its authority.” This rule by itself would not be applicable to the instant case as service of process was effected in the courtroom but outside the court’s presence and in between calendar calls.
State Residency Immunity Distinction?
The English common law made no New York state residency distinction. The doctrine of immunity from arrest of a litigant attending a trial of an action to which he is a party found early recognition and dates back to the Year Book of 13 Henry IV, I, B (Sampson v Graves, 208 App Div 522 [1st Dept 1924]). This is for the obvious reason that England had no sovereign states. The privilege is not a creature of statute, but was created and deemed necessary for the due administration of justice. (See Matthews v Tufts, 87 NY 568, 570 [1882], citing Van Lieuw v Johnson, Ct App, Mar. 1871 [unreported].)
The logical question now arises, exactly when did New York’s appellate courts recognize a residency distinction for application of the “Courthouse Sanctuary”? The answer is that the Court of Appeals never established such a rule. In contra point of fact, the Court of Appeals has opined that
“[i]t is the policy of the law to protect suitors and witnesses from arrests upon civil process while coming to and attending the court and while returning home. Upon principle as well as upon authority their immunity from the service of process for the commencement of civil actions against them is absolute eundo, morando et redeundo.” (Person v Grier, 66 *344 NY 124, 125 [1876].)
In this unanimous opinion, the Court of Appeals expressly addressed. the New York State resident immunity distinction and established in its dicta (at 126) that “whether any distinction should or does in fact exist, is at least doubtful. This immunity is one of the necessities of the administration of justice, and courts would often be embarrassed if suitors or witnesses, while attending court, could be molested with process.” It is noted that Person involved a foreign state resident. In establishing the sanctuary doctrine, the Court stated that (at 125) “this rule is especially applicable in all its force to suitors and witnesses from foreign States . ...” By direct implication, the Court of Appeals is also applying the protective rule to New York residents.
The basis of the “Courthouse Sanctuary” rule is that parties should be allowed to contest jurisdiction without submitting to it. “Allowing Re-service . . . makes a mockery of the traverse hearing and essentially allows the plaintiff to use a defective default judgment as a weapon to compel the defendant to submit to service of process.” (Ford Motor Credit Co. v Bobo, supra at *2.) The location of an individual’s residence does little to legitimize such a mockery. Absent the compulsion of clear controlling precedent, this court will not condone such a situation.
CPLR 3211 (a) (4)
Defendant’s next challenge asserts the summons in No. 3248-03 should be dismissed as it is identical to the summons in No. 3915-02 as it was served while No. 3915 was pending. CPLR 3211 (a) (4) provides:
“R 3211. Motion to dismiss.
“(a) Motion to dismiss cause of action. A party may move for judgment dismissing one or more causes of action asserted against him on the ground that . . .
“(4) there is another action pending between the same parties for the same cause of action in a court of any state or the United States; the court need not dismiss upon this ground but may make such order as justice requires.”
This statute vests this court with broad discretion in considering whether to dismiss an action on the ground another action is pending between the parties. (Whitney v Whitney, 57 NY2d 731 [1982].)
The plaintiff’s affirmation in opposition dated October 10, 2003 asserts Siegel, NY Prac § 262 (3d ed) in support of its *345 argument against dismissal. Said affirmation acknowledges the existence of two separate and distinct index numbers for the subject two actions, and asserts that defendants cannot dismiss the same action for both jurisdictional and multiplicity reasons.
The Second Department has extensively addressed this issue in conjunction with Supreme Court proceedings. It has held that service of a second Supreme Court summons is not the commencement of a “second” action for section 3211 (a) (4) purposes. (Heusinger v Russo, 96 AD2d 833 [2d Dept 1983].) The service of multiple Supreme Court summons are not considered “second actions” when directed to the proper commencement of only one action. (Dashew v Cantor, 85 AD2d 619 [2d Dept 1981].) Reservice of a Supreme Court summons after initial service of same via order to show cause to cure a jurisdictional challenge was also found to be outside the “second action” rule. (See, Helfand v Cohen, 110 AD2d 751 [2d Dept 1985].)
Supreme Court Action v District Court Action
At this point in the discussion it is imperative to note that there exists a distinction between commencement of a Supreme Court action and a District Court action. Supreme Court practice requires plaintiffs to purchase an index number before service and requires that service be made within 120 days. (See CPLR 306 [a], [b].) District Court actions allow attorneys to commence actions and serve summons and complaints without purchasing index numbers. There exists no time period for service of same. (See UDCA 401-410.)
All of the aforestated “second action” precedents involve Supreme Court actions, with the alleged “second action” pending under the first action’s index number. In the instant District Court proceeding the plaintiff admits two separate index numbers were purchased. This indicates that plaintiff considered the actions separate and distinct and that the service of the second action was not merely reservice of the first summons. Under this scenario defendant was briefly exposed to the possible entry of two judgments. This is exactly the situation section 3211 (a) (4) was designed to prevent.
The New York City Civil Court operates the same as this court concerning the commencement of proceedings and the purchase of index numbers. In a case almost exactly on point, it was held that reservice following a traverse hearing constituted a new and separate action requiring section 3211 (a) (4) dis *346 missal. (Mayline Co. v Liebman, 118 Misc 2d 251 [Civ Ct, NY County 1983].) This court concurs and will apply its logic to this proceeding.
The above-captioned complaint is dismissed for both of the aforestated reasons.